576 So.2d 1133 (1991)
CHANDLER PARTS AND SERVICE, INC., Plaintiff-Appellee,
v.
LOUISIANA WORKER'S COMPENSATION SECOND INJURY BOARD, Defendant-Appellant.
No. 89-923.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
Writ Denied May 17, 1991.
John T. Bennett, Norris Greenhouse, Marksville, for plaintiff/appellee.
Oliver W. Williams, Baton Rouge, for defendant/appellant.
Before DOMENGEAUX, C.J., and GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
This appeal stems from the Louisiana Worker's Compensation Second Injury Board's (Board) denial of a worker's compensation reimbursement claim filed by plaintiff, Chandler Parts and Service, Inc. *1134 (Chandler). Following the denial of its claim, Chandler filed a petition in the Twelfth Judicial District Court, Parish of Avoyelles, seeking judgment against the Board for reimbursement for medical bills and benefits paid by Chandler as a result of a heart attack and subsequent death of a Chandler employee, Daniel A. Dixon. The trial judge rendered judgment in favor of Chandler. The Board appealed. We reverse.

FACTS
Daniel A. Dixon was hired by Chandler on October 9, 1986, as a service technician to repair commercial appliances. Dixon was not required to and did not undergo a preemployment physical. On his employment application, Dixon stated that he did not have a preexisting health condition. At some point in the spring of 1987, Dixon began experiencing isolated episodes of near blackouts, dizziness and tunnel vision. After the third such incident, Dixon told Bobby and Robert Chandler, both Chandler executives, of the problems he was experiencing. The Chandlers suggested that Dixon consult a physician. In this connection, both testified that they made this recommendation so as to avoid the possibility of Dixon having an accident in a company vehicle.
Dixon underwent an examination at the V.A. hospital in Baton Rouge on May 4, 1987. The results of this examination were not revealed to his employer. Dixon continued to work until May 11, 1987 when he suffered a heart attack while repairing a walk-in refrigerator at St. Mary's Catholic School in Cottonport, Louisiana. He never returned to work and subsequently died on November 18, 1987.
Dixon's wife, Rose Dupont Dixon, filed suit against Chandler, individually and on behalf of the minor, Kristen Marie Dixon, seeking worker's compensation benefits. The trial court determined that the heart attack of May 11, 1987 was job-related and rendered judgment awarding worker's compensation benefits and death benefits to Rose Dixon and Kristen Marie Dixon. We subsequently affirmed the judgment of the trial court. Dixon v. Louisiana Restaurant Association Through Self Insurers Service Bureau, Inc., 561 So.2d 135 (La. App. 3rd Cir.1990). Chandler then sought reimbursement from the Louisiana Worker's Compensation Second Injury Fund pursuant to La.R.S. 23:1371 et seq.[1]
The purpose of the Louisiana Worker's Compensation Second Injury Fund (Fund) is to encourage the employment of persons permanently partially disabled. The Fund protects employers and insurers from excess liability for worker's compensation claims when a subsequent injury merges with a preexisting permanent partial disability to cause a greater disability than would have resulted from the subsequent injury alone. La.R.S. 23:1371(A). In order to qualify for reimbursement from the Fund, an employer must satisfy the requisites of La.R.S. 23:1378. La.R.S. 23:1378, in effect at the time of Dixon's injury and subsequent death, provided in pertinent part as follows:[2]
"A. An employer operating under the provisions of this Chapter who knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability, as defined in Subsection F hereof, shall be reimbursed from the second injury fund as follows:
(1) If such an employee who has a permanent partial disability incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability, the employer or, if insured, his insurer, in the first instance, shall pay all compensation provided in this Chapter, but the employer or, if insured, his insurer thereafter shall be reimbursed from the second *1135 injury fund for all weekly compensation payments payable after the first one hundred and four weeks of payments.
(2) If such an employer becomes liable for the payment of death benefits under the provisions of this Chapter, said employer, or, if insured, his insurer, shall be entitled to reimbursement from the worker's compensation second injury fund for all death benefit payments payable after the first one hundred and seventy-five weeks of payments, provided that death benefits are actually paid by said employer or his insurer under the provisions of this Chapter, and provided that the deceased employee of said employer died as a result of a combination of a preexisting permanent partial disability and a subsequent compensable injury or that said employee's death would not have occurred but for the preexisting permanent partial disability.
(3) If such an employee who has a permanent partial disability incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability, the employer or, if insured, the insurer, shall be reimbursed from the second injury fund for medical expenses actually paid and payable in accordance with R.S. 23:1203 as follows:
(a) Fifty percent of all reasonable and necessary medical expenses actually paid, which exceed five thousand dollars but are less than ten thousand dollars.
(b) One hundred percent of all reasonable and necessary medical expenses actually paid and payable, which exceed ten thousand dollars.
(4) No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee's preexisting permanent partial disability prior to the subsequent injury.
. . . . .
F. As used in this Part, permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.
Where, however, the employer establishes that he had knowledge of the preexisting permanent partial disability prior to the subsequent injury, there shall be a presumption that the employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment where the condition is one of the following:
(1) Epilepsy;
(2) Diabetes;
(3) Cardiac disease;
..."
The trial judge, in his oral reasons and findings, determined that Dixon had a serious heart condition (cardiac disease) prior to his employment by Chandler. The trial judge reasoned that the total occlusion of Dixon's circumflex artery did not occur over a period of months but preexisted Dixon's employment with Chandler. The trial court concluded that this condition rendered Dixon permanently partially disabled within the intendment of La.R.S. 23:1371 et seq. at the time he was employed by Chandler. Although we agree completely with these conclusions, we reverse finding the second essential element for reimbursement from the Fund lacking, i.e., knowledge by Chandler of Dixon's permanent partial disability prior to Dixon's injury on May 11, 1987.
La.R.S. 23:1378(A) provides that an employer shall be reimbursed from the Fund only if he knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability, as defined in subsection (F). La. R.S. 23:1378(A)(4) provides that no employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee's preexisting permanent partial disability prior to the subsequent injury. Therefore, Chandler was required to prove, not only that Dixon had a preexisting condition which rendered him permanently partially *1136 disabled, but also that it (Chandler) had actual knowledge of Dixon's preexisting cardiac disease prior to the heart attack of May 11, 1987.
In his oral reasons, the trial judge stated:
"... [I]t's very clear that Chandler did not know that he (Dixon) had a permanent partial disability when he was hired in October 1986. It is also a finding of fact to this court that Chandler learned that Dixon was suffering dizziness and black-outs about three or four weeks prior to the heart attack on May 11, 1987. It is also a finding of fact that Chandler did not know specifically that Dixon was suffering from a heart disease.
. . . . .
Chandler did retain Dixon as an employee after learning of the dizziness and blackouts ...
... [I]s knowledge of dizziness and blackouts, can that be knowledge of cardiac disease? ... [t]he employer had knowledge of dizziness and blackouts for a period of three or four weeks before ...
... I don't know if there was a knowing intention to retain a partially disabled employee. That, I can't even make that finding of fact, because I don't think the evidence is positive enough ... [T]he court will find that there was a retention of the employee, within the provisions of the act, and that the knowledge of the dizziness and blackouts will constitute knowledge of a permanent partial disability. I don't know if this is a correct finding; I think it's a close issue, but I'm going to decide in favor of the plaintiff ..."
We can find no clear error in the trial court's factual determination of knowledge on the part of Chandler prior to May 11, 1987 that Dixon had experienced episodes of dizziness, near blackouts and tunnel vision. However, we disagree with the trial court's conclusion that this circumstance clearly establishes that Chandler had actual knowledge of Dixon's permanent partial disability prior to May 11, 1987. There is no medical evidence in the record to support a finding that the symptoms of which Dixon complained are synonomous with heart disease. More importantly, even if such symptoms are indicative of heart disease, the record does not establish that the Chandler executives were aware of such fact. Further, there is no medical evidence in the record which would support a finding that one who suffers isolated episodes of dizziness, near blackouts and tunnel vision over a period of four weeks is permanently partially disabled. In sum, we find that Chandler did not have actual knowledge that Dixon suffered from a permanent partial disability prior to his heart attack on May 11, 1987, and Chandler is, therefore, not entitled to reimbursement from the Second Injury Fund for any benefits paid to the Dixons.
For these reasons, we reverse and set aside the judgment of the trial court and order that plaintiff's suit be dismissed with prejudice. All costs at the trial level and on appeal are assessed to Chandler Parts and Service, Inc.
REVERSED.
NOTES
[1] It is not clear from the record whether Chandler has ever made any benefit payments to the Dixons pursuant to the judgment affirmed in Dixon, supra. However, because we ultimately conclude that Chandler's suit must be dismissed, this circumstance is of no moment.
[2] This statute was later amended by Act 997 of 1988 and Act 260 of 1989.