# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 08-1380


**BOBBIE JEFFERS**

**VERSUS**

**KENTUCKY FRIED CHICKEN**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 05-07078
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**


**Michael Benny Miller**
**Miller & Miller**
**P. O. Box 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**Counsel for Plaintiff Appellee:**
**Bobbie Jeffers**

**Kristine Smiley**
**Tierney and Smiley, LLC**
**11606 Southfork Dr., Suite 104**
**Baton Rouge, LA 70816**
**(225) 298-0770**
**Counsel for Defendant Appellant:**
**Kentucky Fried Chicken**

**GREMILLION, Judge.**

Appellants, Kentucky Fried Chicken and Louisiana Retailers Mutual Insurance Company (KFC), appeal the judgment of the workers' compensation judge in favor of Appellee, Bobbie Jeffers (Jeffers). Jeffers answered the appeal seeking additional attorneys fees. For the reasons that follow, we affirm in part and reverse in part.

**FACTS**

Jeffers was employed by KFC on January 2, 2005, when, as she lifted a pan of food, she felt or heard a "pop" in her back. The following day, she experienced an exacerbation of that condition; nonetheless, she continued to work for several days thereafter. On January 14, 2005, Jeffers complained to Mr. Ron Wilson, owner of the restaurant. Wilson and Jeffers discussed a referral to a doctor. Although the import of this conversation about a doctor is greatly in dispute, as we will later discuss, the gist of the conversation is not. Wilson asked Jeffers if Dr. Ronald Menard was acceptable to her. Jeffers replied that Dr. Menard was her family physician, and she consented to see him.

Dr. Menard saw Jeffers on January 14, 2005, and diagnosed her with lumbar sprain, "new problem." He treated her with medications and advised that she could return to work on January 16 or 17.[1] Jeffers went back to Dr. Menard on January 17. Dr. Menard told her at that time to take the next three to four days off.

On January 21, Jeffers again saw Dr. Menard, who at that time initiated physical therapy. Dr. Menard released Jeffers to work light duty the following week, if such work was available.

Wilson had placed his workers' compensation carrier on notice of Jeffers' claim.

---

[1] All of the pertinent events, except as otherwise noted, took place in 2005.

It assigned Ms. Diane Spencer of Summit Claims Service to adjust the claim. Spencer forwarded a packet of information and documents to Jeffers. Included in that packet was a form for Jeffers to designate a physician of her choice. Jeffers signed that document, dated it February 3, 2005, and wrote that her physician of choice was Dr. Menard.

On February 4, Dr. Menard referred Jeffers to Dr. Roland Miller, an orthopedic surgeon in Crowley, Louisiana. Dr. Miller was to have seen Jeffers on February 17. Dr. Menard excused Jeffers from work until her appointment with Dr. Miller. Sometime between February 4 and 17, Spencer requested an update from Dr. Menard on Jeffers' work status. Dr. Menard faxed Spencer a reply indicating that Jeffers could return to work on February 19, despite his earlier February 4 work excuse and the fact that he had not seen Jeffers since that February 4 visit.

Unfortunately, Dr. Miller was sick on February 17, and did not see Jeffers then. This fact was communicated to Dr. Menard that day, who noted in his records that he was extending Jeffers' work excuse until her rescheduled appointment with Dr. Miller in March. The records and testimony do not establish that this extension of the work excuse was communicated to Spencer.

Spencer had not initially been provided with Jeffers' wage information. Summit commenced weekly indemnity benefit payments to Jeffers, mailed directly to her home, beginning with the January 24 pay period, for which Jeffers was paid $88.33 per week. Spencer's supervisor issued this initial payment and based this payment on information that Jeffers was paid $5.30 per hour. Upon receipt on February 18 of Dr. Menard's reply indicating that Jeffers could return to light duty on February 19, Spencer terminated weekly indemnity payments.

2

Jeffers saw Dr. Miller on March 3, and he transmitted his report to Spencer. Dr. Miller indicated that Jeffers was unable to work. Her indemnity payments commenced again on March 4. These continued at the rate of $88.33 until March 31, when they were changed to $117.00 per week, based upon wage information Spencer at last received from KFC. Jeffers' indemnity checks were based upon the belief that she was a part-time employee.

Treatment by Dr. Miller continued. On April 7, Dr. Miller reported that an MRI indicated a small L5-S1 disc herniation. However, Dr. Miller felt it could be treated non-surgically with epidural steroid injections that he wanted performed by a pain management specialist. While a referral for a pain management specialist was not approved, the steroid injections were. However, Jeffers was afraid of the injections and refused them.

On June 16, Dr. Miller had reached the point that he felt Jeffers needed a surgical evaluation by a neurosurgeon. He relayed this to Spencer by his report of that date. No neurosurgeon was named as the doctor to whom Dr. Miller wished to refer Jeffers, and Jeffers did not specify a neurosurgeon herself.

On June 20, a representative of Cypress Vocational Services, L.L.C., the vocational rehabilitation consultants hired by KFC, confirmed by letter to Dr. Miller that he was sending Jeffers to undergo a functional capacity examination, and that her work status was dependent on the outcome of that examination. Representatives of the Fontana Center for Work Rehabilitation, Inc., in Lafayette, Louisiana, scheduled the one-day examination for August 4. Jeffers did not appear for that FCE, though, because her back was hurting.

On August 31, Jeffers' counsel forwarded a letter of representation to Spencer.

3

In that correspondence, counsel requested that Spencer guarantee the referral to the still-unnamed neurosurgeon. Spencer did not directly respond to this request, but testified at trial that she did not deny the referral. That correspondence also attached a statement from American Legion Hospital in the amount of $165.00 with the demand that Spencer pay same. Spencer testified at trial that $99.00 had been paid on the American Legion statement on August 23. The statement was dated August 16. The record contains no other evidence regarding the payment of the American Legion statement.

A similar issue arose at trial over a bill from Opelousas Radiology Group, Ltd., of Lafayette. Spencer testified that $33.00 toward the bill was paid on April 13, 2005. This bill, though, had been forwarded to Spencer by letter from Jeffers' attorney dated April 18, 2007, and was dated March 28, 2007. While the bill did not reflect the date of service by the radiology group, it showed that the bill was 31-60 days past due.

Jeffers filed a motion to compel medical treatment with Dr. John Cobb, a Lafayette orthopedic surgeon. In her motion, Jeffers asserted that she had scheduled an appointment with Dr. Cobb for October 24, 2005, but KFC had denied benefits for it. The basis for KFC's denial was that, because Dr. Menard was Jeffers' choice of general practitioner, and he had referred her to Dr. Miller, Dr. Miller was thus her choice of orthopedic surgeon. The motion to compel was held on April 5, 2006. The workers' compensation judge ruled that Dr. Menard was KFC's choice of general practitioner; thus Jeffers was free to seek treatment from Dr. Cobb. She did see Dr. Cobb, who ultimately performed a diskectomy and fusion on January 23, 2007.

Jeffers filed three "Disputed Claims for Compensation"(hereafter simply referred to as "1008s"). In her first 1008, Jeffers asserted that no medical treatment

had been authorized, that the compensation rate was incorrect, that she had been denied her choice of orthopedic surgeon and "neuro,"and she was entitled to penalties and attorneys fees. That 1008 was filed on October 5, 2005. The first amended 1008 was filed on July 18, 2006, and asserted as the bases for the dispute the aforementioned items plus interest on all amounts. The second amended 1008, filed on August 27, 2007, asserted as grounds for dispute incorrect indemnity rate; failure to authorize medical treatment; termination of benefits on February 18, 2005; failure specifically to authorize the "neuro," pain management and physical therapy; denial of choice of physician, "ortho/neuro"; penalties and attorneys fees; late weekly compensation checks; and legal interest on all amounts.

Trial commenced on December 5, 2007. The parties prepared pretrial memoranda. In her "Answer to Pretrial Questionnaire," Jeffers asserted that the issues before the court were: whether KFC provided reasonable medical treatment, including the timely guaranteeing of medical treatment and payment of bills; whether KFC paid the appropriate weekly benefit rate and whether it paid them timely; whether mileage had been paid and paid timely; whether KFC provided appropriate vocation rehabilitation services; and whether KFC was unreasonable, arbitrary and capricious in failing to pay the correct indemnity rate, failing to allow choice of physician, failing to approve the referral by Dr. Miller to a neurosurgeon, failing to approve the referral by Dr. Miller to a pain management specialist, terminating indemnity payments, paying indemnity checks untimely, and denying physical therapy. Shortly before trial, Jeffers' counsel served supplemental discovery responses that—KFC contends—for the first time raised the issue of when her weekly indemnity benefits should have commenced. KFC's counsel objected to this issue being heard at that time. The

workers' compensation judge stated that if it appeared to him that KFC was going to be prejudiced by this late response, he would rule on allowing evidence on this issue at that time.

Following the close of evidence, the workers' compensation judge found for Jeffers and awarded her weekly indemnity benefits of $142.00, ordered KFC to pay for all reasonable and necessary medical treatment, and assessed $8,000.00 in penalties and $18,750.00 in attorneys fees. The workers' compensation judge awarded penalties because: 1) KFC failed to pay the correct compensation rate; 2) KFC failed to commence indemnity appropriately (failing to pay the "waiting week"); 3) KFC failed to timely guarantee treatment with a neurosurgeon; and, 4) KFC failed to timely pay medical bills.

This appeal ensued. Jeffers answered the appeal and seeks additional attorneys fees in the defense of the appeal. For the reasons that follow, we affirm in part and reverse in part.

## ASSIGNMENTS OF ERROR

KFC urges ten assignments of error by the workers' compensation judge:

1) awarding indemnity benefits for the period of January 14 through 23, 2005;
2) allowing the introduction of evidence regarding the "waiting week" of January 14 through 23, 2005;
3) finding that KFC did not pay the "waiting week ;"
4) awarding penalties and attorneys fees for failing to pay the "waiting week ;"
5) ruling that Dr. Menard was KFC's choice of physician and not Jeffers';
6) awarding penalties for failing to approve a neurosurgeon;
7) applying a 40-hour work week presumption in the calculation of indemnity benefits;
8) awarding penalties for untimely payment of the American Legion Hospital statement and Opelousas Radiology Group bill;
9) finding that Jeffers did not violate La.R.S. 23:1208.1 by not disclosing on a post-hire questionnaire previous treatment for back ailment; and,

6

10) awarding excessive attorneys fees.

## ANALYSIS

Generally, the factual findings of a workers' compensation judge are subject to the manifest error standard. That standard requires that the appellate court, in order to reverse, must find that the record reflects that there is no reasonable basis for the workers' compensation judge's factual determinations. *Clay v. City of Jeanerette*, 99-1421 (La.App. 3 Cir. 5/31/00), 768 So.2d 609, *writ denied*, 00-2006 (La. 10/27/00), 772 So.2d 124. However:

> "[T]he appellate court is not required by [the manifest error/clearly wrong] principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." *West*[*v. Bayou Vista Manor, Inc.*]*,* 371 So.2d at 1150; *See Thomas v. RPM Corp.,* 449 So.2d 18, 21 (La.App. 1st Cir.), *writ denied,* 450 So.2d 965 (La.1984).

*Bruno v. Harbert Intern. Inc.*, 593 So.2d 357, 361 (La.1992).

*Assignments of error numbers 1 through 4:* KFC complains of the award of indemnity benefits for the period of January 14-23, 2005. The record reflects that Jeffers first saw Dr. Menard on January 14. Dr. Menard initially opined that Jeffers could return to work on January 16 or 17. However, on January 17, Dr. Menard saw Jeffers again and opined that she should take the ensuing three or four days off and return to light duty the following week. A fair reading of the record supports the workers' compensation judge's ruling that Jeffers' disability began on January 14. The issue regarding this period was whether Jeffers worked on the 16th and/or 17th. She was excused from work for the remainder of the week.

KFC complains that it was ambushed at trial because Jeffers had not made an issue of when her benefits should have commenced. We disagree. The second

7

amended 1008, which was filed a full three months before the trial, specifically asserted that part of the dispute at issue was timeliness of benefits. Further, Jeffers' "Answer to Pretrial Questionnaire," filed even before the second amended 1008, twice referenced the timeliness of benefits. Further, the issue of when an employee actually worked during a given week should not be a mystery to either the employee or the employer; this is a fact equally verifiable by both. The argument in a workers' compensation trial should be about whether the employee could work, not whether she did. The issue was properly before the workers' compensation judge, and we find no error in his rulings on either the award of benefits for that week or the award of penalties for KFC's failure to pay indemnity for that week.

*Assignment of error number 5:* KFC's fifth assignment of error asserts that the workers' compensation judge incorrectly ruled that Dr. Menard was not Jeffers' choice of physician. This is a finding of fact, and cannot be disturbed absent manifest error.

A reasonable basis exists in the record for this finding. It is true that Jeffers signed a selection of physician naming Dr. Menard. We are also mindful that Dr. Menard was Jeffers' family physician. Indeed, she may have sought treatment from Dr. Menard without her employer's intervention, but that is purely hypothetical. The fact remains that the uncontradicted testimony established that her employer directed his injured employee to her family physician. The choice was the employer's.

*Assignment of error number 6:* The workers' compensation judge ruled that KFC failed to approve a neurosurgeon as recommended by Dr. Miller. He assessed a $2,000 penalty to KFC for this failure. KFC urges that this was error because Jeffers never specified a neurosurgeon until after the hearing was held in which it was ordered to provide her with such a consult.

8

The evidence establishes that KFC in fact never denied Jeffers the right to a neurosurgical consult. KFC merely requested that Jeffers designate to whom she wished to seek treatment. Jeffers did not designate a neurosurgeon until after the workers' compensation judge ordered one authorized. In that same order, the workers' compensation judge found that Jeffers had not chosen an orthopedic surgeon and was, therefore, free to choose Dr. John Cobb. Dr. Cobb, though, did not at any time recommend any neurosurgical consult. Indeed, the consult was recommended by Dr. Miller for the purpose of determining whether Jeffers was a candidate for surgery, while Dr. Cobb reached this determination on his own without the opinion of a neurosurgeon.

The Louisiana Supreme Court has held that, under certain circumstances, penalties can be awarded for an employer's refusal to authorize a referral to a health care provider. *Authemont v. Shappert Eng'g.*, 02-1631 (La. 2/25/03), 840 So.2d 1181. We note, however, that in *Authemont*, the employer had authorized treatment with a specified doctor, then refused to prepay $750 for the treatment. The employer under those circumstances would have been subject to a penalty anyway.

The purpose of penalties is to discourage indifference on the part of the employer. *Id.* In the matter at hand, the uncontradicted testimony establishes no such indifference on KFC's part regarding this authorization. It is not unreasonable that the employer at least be given the name of the physician to whom the referral is sought. KFC raises a valid point: the method Jeffers employed creates a "double authorization" procedure, in that the employer must initially authorize the referral to any neurosurgeon, then authorize the subsequent referral to a specific neurosurgeon. This when all Jeffers had to do was actually go see a neurosurgeon, as was her right.

9

La.R.S. 23:1121. When Jeffers did actually name a neurosurgeon, Dr. Thomas Bertuccini, the referral was authorized by Spencer.

This is in keeping with the statutory scheme. La.R.S. 23:1201(F) imposes a penalty for the failure of the employer "to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121." Section 1201 does not impose a penalty for failing to authorize a specialist, but rather for failing to consent to the employee's selection of a treating physician. For the employer to fail to consent to the employee's selection of a treating physician, it stands to reason that an actual selection must be made. Consent for an initial treating physician of a given specialty is not required by La.R.S. 23:1121. *See Apeck Constr., Inc. v. Bowers*, 03-486 (La.App. 3 Cir. 12/10/03), 862 So.2d 1087, *writ denied*, 04-459 (La. 4/23/04), 870 So.2d 301. We, therefore, find that the workers' compensation judge did clearly err in finding that KFC failed to authorize a neurosurgical consult, and reverse his award of penalties in the amount of $2,000.00.

*Assignment of error number 7:* The workers' compensation judge awarded Jeffers weekly indemnity benefits in the amount of $142.00 from January 14, 2005. KFC asserts that the amount was based upon an inappropriate presumption that Jeffers was a full-time employee whose compensation rate should have been based upon a 40-hour work week. We disagree.

La.R.S. 23:1021(11) defines a part-time employee as:

> [A]n employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position.

No evidence that the custom in the industry classifies Jeffers' position as part-time was introduced. There was no evidence that KFC classified Jeffers' position as part-time.

10

No evidence demonstrated Jeffers' knowledge that the position was part-time. Nothing in the record, then, establishes that Jeffers was indeed a part-time employee as defined in La.R.S. 23:1021(11).

The workers' compensation judge properly calculated the weekly indemnity benefits. According to La.R.S. 23:1021(12)(a), unless a non-part-time hourly employee regularly works less than 40 hours per week at her own discretion, the average weekly wage is calculated by multiplying her hourly pay rate times either the average actual hours worked during the four full weeks before the accident, or times 40, whichever is greater.

KFC was the party in the best position to correctly calculate Jeffers' benefits. KFC failed to communicate Jeffers' wage information to its insurer, and the insurer failed to pay the correct rate. We affirm the workers' compensation judge's awards of indemnity from January 14, 2005, and of penalties and attorneys fees.

*Assignment of error number 8:* The workers' compensation judge assessed KFC penalties in the amount of $2,000.00 for failure to timely pay medical bills. The first was a radiology statement from American Legion Hospital in the amount of $165.00. Spencer testified that the statement was paid. However, she further testified that the payment was made by someone else. Four key facts about this statement are noteworthy: 1) its date; 2) when the statement was forwarded by Jeffers' counsel; 3) when the bill was paid; and, 4) a "pending notice" included on it. This statement was dated August 16, 2005. The date of service on the statement was January 14, 2005. At trial, counsel for Jeffers introduced his correspondence of August 31, forwarding the statement to Spencer. The uncontradicted testimony at trial establishes that $99.00 toward this statement was paid on August 23, 2005. Why a lesser amount was paid

11

remains a mystery, as there is no explanation in the record. While it appears that the bill was timely paid, it is clear that the full amount was not. Without a valid explanation, this court cannot say that the workers' compensation judge erred in his findings regarding the bill.

The Opelousas Radiology Group bill indicated on its face that it was more than 30 days past-due. Again, an amount less than the actual bill was paid. With no further evidence introduced than the bill itself, we cannot conclude the workers' compensation judge erred in ruling that it was not paid timely. We affirm the award of penalties.

*Assignment of error number 9:* KFC assigns as error the workers' compensation judge's adverse ruling on the issue of whether Jeffers forfeited her benefits pursuant to La.R.S. 23:1208.1. That section provides that an employer may require the employee to complete a questionnaire meeting certain formal requisites that inquires about the employee's previous injuries. The employee is required to answer those questions truthfully. If the employee fails to answer truthfully regarding a previous injury, her benefits may be subject to forfeiture.

The case of *Nabors Drilling USA v. Davis*, 03-136 (La. 10/21/03), 857 So.2d 407, provides the test for determining whether benefits are subject to forfeiture under §1208.1: (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. The employer has the burden of proving each of the elements required by the statute. *Id.* The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute. *Id.*

In determining whether an employer has been prejudiced by an untruthful response, the supreme court adopted the "inevitability test," under which the employer

must demonstrate a direct relation between the two injuries, such that the previous injury rendered it inevitable or very likely that the subsequent injury would occur. *See Wise v. J.E. Merit Constructors, Inc.*, 97-684 (La.1/21/98), 707 So.2d 1214. This lays a very difficult test before the employer, and with good reason: forfeiture of benefits is a harsh remedy. It should require very strict proof.

The evidence demonstrated that Jeffers indeed suffered low back strain in the past. Nothing demonstrated any direct relation between the previous low back strain and Jeffers' herniated disc for which Dr. Cobb performed surgery. We cannot say that the workers' compensation judge was in error.

*Assignment of error number 10:* The workers' compensation judge assessed attorneys fees in the amount of $18,750.00, which KFC asserts was excessive. The Louisiana Supreme Court has stated:

> The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case.

*McCarroll v. Airport Shuttle, Inc.*, 00-1123, p. 9 (La. 11/28/00), 773 So.2d 694, 700. Given the discretion vested in the workers' compensation judge, we must find that discretion abused in order to reverse his ruling.

The record reflects that the hearings held are best described as contentious. Much of the record is devoted to evidentiary objections. Additionally, Jeffers' counsel provided extensive documentation of the work he performed on the case. Given the nature of the claim and the documentation provided by Jeffers' counsel, we cannot conclude that the workers' compensation judge abused his discretion in

13

awarding the fees.

*Jeffers' request for additional attorneys fees on appeal:* Jeffers seeks additional attorneys fees on appeal. This court has long held that an employee who successfully defends the workers' compensation judge's ruling should be entitled to additional fees. *See Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. Jeffers has succeeded in defending nine of ten assignments of error in this appeal. She is, therefore, entitled to additional fees in the amount of $3,000.00.

## CONCLUSION

Addressing KFC's assignments of error, we find:

1), 2), 3) and 4) The issue of the "waiting week" of January 14 through 23, 2005, was properly before the workers' compensation judge, and he correctly calculated and awarded weekly indemnity. He further correctly awarded penalties for KFC's failure to pay timely and correctly the weekly indemnity benefits.

5) There was no error in the workers' compensation judge's finding that KFC made the choice of Dr. Menard;

6) The workers' compensation judge did err in determining that KFC failed to authorize a neurosurgeon and in awarding a penalty on that basis;

7) The workers' compensation judge accurately calculated Jeffers' average weekly wage;

8) KFC failed to properly and timely pay the American Legion Hospital and Opelousas Radiology Group invoices, and the workers' compensation judge correctly awarded a penalty for that failure;

14

9) The workers' compensation judge did not err in finding that Jeffers did not violate La.R.S. 23:1208.1; and

10) The award of attorneys fees was not an abuse of the workers' compensation judge's vast discretion. Therefore, with regard to the awards of penalties by the workers' compensation judge, we rule as follows:

Failing to pay the correct indemnity rate, $2,000.00: Affirmed

Failing to pay the "waiting week", $2,000.00: Affirmed

Failing to timely guarantee treatment with a neurosurgeon, $2,000.00: Reversed

Failing to pay medical bills in a timely fashion, $2,000.00: Affirmed.

Plaintiff's request for additional attorneys fees in the defense of this appeal is granted and she is awarded $3,000.00 for same. All costs of the appeal are cast against KFC.

**AFFIRMED IN PART, REVERSED IN PART.**