# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1549


**BILLY JO MASSINGILL**

**VERSUS**

**DUNHAM PRICE GROUP, L.L.C.**


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 07-02254
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED AS ORDERED.**

**Marcus M. Zimmerman**
**4216 Lake Street**
**Lake Charles, LA   70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Billy Jo Massingill**

**Eric J. Waltner**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, LA   70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Dunham Price Group, L.L.C.**

AMY, Judge.

The claimant brought suit against his employer seeking indemnity benefits, medical treatment, penalties, and attorney fees. The defendant contended that the claimant was not entitled to benefits based upon the fraud defenses in La.R.S. 23:1208 and La.R.S. 23:1208.1. The workers' compensation judge found in favor of the claimant and awarded him benefits, penalties, and attorney fees. The defendant appeals. The claimant answers the appeal, seeking additional attorney fees for defending the appeal. For the following reasons, we affirm and award additional attorney fees for work performed on appeal.

**Factual and Procedural Background**

According to the stipulations entered into between the parties, the claimant, Billy Jo Massingill, was in an accident during the course and scope of employment with the defendant, Dunham Price, when he fell nine feet from the hood of a front end loader. The claimant sustained injuries, requiring him to undergo nose surgery and have several teeth replaced. The defendant provided for those procedures. After the procedures were completed, the claimant worked for the defendant for several months before quitting his job. He complained of ongoing head and neck pain and scheduled an appointment with an orthopedic surgeon. The claimant was evaluated by Dr. Clark Gunderson, an orthopedist, who issued a no-work restriction and diagnosed the claimant with a cervical strain. Further, Dr. Gunderson sought authorization for surgery, specifically, for an anterior cervical fusion of the claimant's C3-4 and C4-5 with anterior plate and bone growth stimulator.[1] After this no-work restriction was

---

[1] According to a radiologist report dated July 2, 2008, the MRI impression was that the claimant had "mild broad based disc bulges at C4-5 and C5-6 which flatten the ventral thecal sac but does appear to result in cord impingement at these levels."

issued, the defendant issued temporary total disability benefits but denied authorization for surgery.

On March 15, 2007, the claimant filed a Disputed Claim for Compensation seeking indemnity benefits, questioning the average weekly wage and indemnity computations, and seeking vocational rehabilitation services and other medical authorizations. The claimant also requested penalties and attorney fees. The defendant responded to the claim, alleging that the benefits sought by the claimant were forfeited under La.R.S. 23:1208 and La.R.S. 23:1208.1. Specifically, the defendant argued that the claimant made multiple misrepresentations about prior medical conditions. Further, the defendant argued that the claimant was not entitled to surgery, penalties, or attorney fees. The workers' compensation judge appointed Dr. Lynn Foret as an independent medical examiner to opine as to whether surgery was appropriate.

After a full hearing on the merits, the workers' compensation judge denied the defendant's fraud defenses and awarded benefits, surgery, penalties and attorney fees, and costs and interest to the claimant.

The defendant appeals, asserting that the workers' compensation judge erred in: (1) denying the defense under La.R.S. 23:1208 and/or La.R.S. 23:1208.1; (2) awarding penalties and attorney fees in light of the fraud defenses; (3) awarding surgery; (4) awarding supplemental earnings benefits (SEBs); (5) assessing penalties pertaining to the SEBs award, the vocational rehabilitation award, the discography, the medical bill payments, the psychological treatment modalities, the initial installment of temporary total disability benefits; and (6) the quantum of attorney fees. The claimant has answered the appeal, seeking additional attorney fees.

2

**Discussion**

*La.R.S. 23:1208*

The defendant first argues that the trial court erred in denying its defense under La.R.S. 23:1208 in light of the claimant's alleged false statements in his deposition, medical reports, and trial testimony.

Louisiana Revised Statutes 23:1208 provides the parameters for determining whether a claimant has committed fraud for the purpose of obtaining workers' compensation benefits. *Campbell v. City of Leesville*, 07-1061 (La.App. 3 Cir. 1/30/08), 974 So.2d 908, *writ denied*, 08-491 (La. 4/25/08), 978 So.2d 366. It provides in pertinent part:

> **§ 1208. Misrepresentations concerning benefit payments; penalty**
>
> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12, the supreme court provided that an employer claiming an employee has forfeited his or her rights under La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." It further explained:

> The statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are willfully made for the purpose of obtaining benefits. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose

3

of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id* at 17.

In her oral reasons for judgment, the workers' compensation judge stated:

In this case, there is some inconsistencies [sic] made by [the claimant]. However, considering [the claimant's] limited mental abilities, the considerable injuries suffered; i.e., falling nine feet head first on the ground, being knocked unconscious from the blow thus suffering the brain injury, then working for nearly a year after the incident does not present to the court one who is willfully making false representations for the purpose of obtaining workers' compensation benefits.

The defendant argues, in brief, that the workers' compensation judge's "reasoning in finding that the misrepresentations were not willfull based upon the claimant's limited mental abilities was in error" and that the workers' compensation judge erred in reasoning "that the misrepresentations by the claimant were not willful based upon the nature of the accident." It asserts that the medical records demonstrate that the claimant was capable of describing his accident and medical history. The defendant cites several examples wherein it alleges that the claimant presented to doctors and denied having previous problems with his neck, back, and nose, while the evidence demonstrated to the contrary. Further, it cites the reports of two doctors who examined the claimant, Dr. Darren Strother, clinical neuropsychologist, and Dr. Rennie Culver, neuropsychiatrist, who opined that the claimant was exaggerating and malingering.

In workers' compensation cases, factual findings are subject to the manifest error or clearly wrong standard of review. *Citgo Petroleum Corp. v. Frantz*, 03-88 (La.App. 3 Cir. 2003), 847 So.2d 734, *writ denied*, 03-1911 (La. 10/31/03), 857 So.2d 734. Therefore, on review, the appellate court must determine not whether the fact

4

finder was right or wrong, but whether the fact finder's conclusion was reasonable. *Id.*

Here, while the workers' compensation judge did not specifically identify what inconsistencies she found in the claimant's testimony, she did acknowledge the existence of inconsistencies. However, the workers' compensation judge found that there was insufficient evidence to prove that any such misrepresentations were made willfully. We find this determination supported by the record.

During his testimony, the claimant admitted to making mistakes in reciting his medical history to some of his doctors. Also, in response to why he did not indicate previous medical problems on his employment application, the claimant explained that he believed he was only supposed to indicate what problems he was suffering with at the time he filled out the application. He explained that he did not believe he had to disclose his previous injuries because "the doctor's [sic] already released me. There was no chronic pain whatsoever."

The defendant provided evidence, in the form of two doctors' reports, that demonstrate that two of his doctors believed the claimant was intentionally exaggerating and malingering his symptoms. In brief, the defendant points specifically to Dr. Culver's conclusion that "there was no physical basis for the complaints of pain . . . ." In her oral reasons for judgment, the workers' compensation judge specifically referenced Dr. Culver's opinion, however, she noted that more weight would be given to the claimant's treating psychiatrist, Dr. Lawrence Dilks. This type of determination, namely how much weight is to be afforded to certain evidence, is clearly within the discretion of the workers' compensation judge. *Frantz*, 847 So.2d 734.

5

The record demonstrates that although inconsistent and erroneous statements were made by the claimant, each part of the *Resweber* test was not met. Specifically, we find no evidence compelling the workers' compensation judge to find that the inconsistent or erroneous statements made by the claimant were made willfully for the purpose of obtaining compensation benefits. Therefore, the ruling on this issue was not manifestly erroneous.

*La.R.S. 23:1208.1*

The defendant argues that the workers' compensation judge erred in denying its defense under La.R.S. 23:1208.1. This statute provides:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

In her oral reasons for judgment, the workers' compensation judge stated:

> [T]his court does not believe the defendant was able to show first a 23:1208.1 violation. The defendant argues that [the claimant] falsely completed a medical questionnaire. After reviewing the record, the Court finds that the defendant has failed to prove that [the claimant] failed to give truthful answers to the questionnaire that "directly relate" to the medical condition for which he makes his claim. Further, there is no evidence to establish that [the claimant] previously suffered a cervical strain and/or depression that merged with any alleged pre-existing injury to result in a substantially greater disability. Therefore, the 1208.1 allegations are without merit.

To prevail under La.R.S. 23:1208.1, the employer must prove the existence of "(1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with

the notice requirements of the statute." *Jeffers v. Kentucky Fried Chicken*, 08-1380, p. 8 (La.App. 3 Cir. 4/1/09), 7 So.3d 812, 820, *writ denied*, 09-956 (La. 6/19/09), 10 So.3d 738, *citing Nabors Drilling USA v. Davis*, 03-136 (La. 10/21/03), 857 So.2d 407. The *Jeffers* court explained the prejudice elements as follows:

> In determining whether an employer has been prejudiced by an untruthful response, the supreme court adopted the "inevitability test," under which the employer must demonstrate a direct relation between the two injuries, such that the previous injury rendered it inevitable or very likely that the subsequent injury would occur. *See Wise v. J.E. Merit Constructors, Inc.*, 97-684 (La.1/21/98), 707 So.2d 1214. This lays a very difficult test before the employer, and with good reason: forfeiture of benefits is a harsh remedy. It should require very strict proof.

In brief, the defendant argues that the direct relationship is established "because the anatomical situs of the pain was the same both before and after the accident in the case at bar[.]" Further, the defendant argues that "there is no requirement of merger when the evidence shows that the subsequent injury was inevitable[.]" However, "it is insufficient to simply establish that the injured body part at issue was previously injured. '[A] direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition.'" *Armand v. Denton-James, L.L.C.*, 08-920, p. 6 (La.App. 3 Cir. 2/4/09), 2 So.3d 1272, 1276, *quoting Wise v. J.E. Merit Constructors, Inc.*, 97-684 (La. 1/21/98), 707 So.2d 1214. The defendant asserts that because the claimant was a laborer, it was inevitable or very likely for some kind of neck and back complaint to occur. However, to evidence a direct relation, the subsequent injury must be inevitable *because* of the presence of the preexisting condition. *See Armand*, 2 So.3d 1272. Here, the claimant fell nine feet onto his head, causing upper body and

head injuries. There is no evidence as to the inevitability of that injury, therefore, the finding of no direct relation was not manifest error.

Absent a direct relation, the employer may prevail on a defense under La.R.S. 23:1208.1 if it can prove that the claimant's untruthful statement affects the employer's ability to receive reimbursement from the second injury fund. In *Wise*, 707 So.2d at 1220, the supreme court explained:

> [T]o be reimbursed from the second injury fund, an employer must prove the existence of three elements. An employer must prove that the employee had a PPD [partial permanent disability] satisfying the requirements of La.R.S. 23:1378(F)[2]. That is, the PPD must be so serious as to hinder employment. *Id.* The employer must also prove he had actual knowledge of the employee's PPD before the occurrence of the injury forming the basis of compensation claim. *Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board*, 576 So.2d 1133 (La.App. 3 Cir.), *writ denied*, 580 So.2d 383 (La.1991). Finally, the employer must prove that the PPD merged with the injury to produce a greater disability. La.R.S. 23:1371(A); La.R.S. 23:1378(A).

This "merger" can be established with medical evidence. *Wise*, 707 So.3d 1214. However, here, the defendant puts forth no evidence that the claimant had a PPD or any such condition that merged with his current injury to produce a greater disability. Accordingly, the record supports the workers' compensation judge's determination that the defendant failed to carry its burden of proof regarding a defense under La.R.S. 23:1208.1.

---

[2] Louisiana Revised Statutes 23:1378(F) provides in pertinent part that a "permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed."

*Surgery*

The defendant argues that, in light of the evidence, the workers' compensation judge erred in awarding surgery. In her reasons for judgment, the workers' compensation judge stated:

> On October 16, 2008, Dr. Clark Gunderson's office requested authorization from Cynthia Gandy, the adjuster, for an "anterior cervical fusion C3-4 and C4-5 with anterior plate. Will need external bone growth stimulator." Dr. Gunderson further requested that [the claimant] be sent to Dr. Daniel Hodges in Lafayette for pain management. The pain management request was approved on October 17, 2009. However, the surgery request was not. A note indicates, "getting disco reviewed by I.M.E. prob., will take three weeks, IH, November 12, 2008." Dr. Lynn Foret, the Court appointed I.M.E., ultimately opined that surgery is appropriate.

The defendant contends that Dr. Foret's report indicating that surgery was appropriate was flawed. It argues that according to Dr. Foret's April 21, 2008 deposition, he opined that if there was a later MRI done on the claimant that disclosed no progression from the first two MRIs, he would not recommend surgery. The defendant asserts that a subsequent MRI was obtained and that the interpretation indicated no change from the previous MRIs. It contends that the supplemental report relied upon by the workers' compensation judge was flawed because Dr. Foret recommended surgery after talking on the phone to the claimant, who told him that his pain had worsened, as opposed to reviewing the subsequent MRI.

Dr. Foret's report dated January 20, 2009, does not support the defendant's assertion. In that report, Dr. Foret indicated that when he examined the claimant in January 2008, he did not have an MRI report. However, he stated that the MRI done on July 2, 2008 (which was subsequent to the deposition testimony on which the defendant relies) showed evidence which confirmed the existence of cord compression. Further, Dr. Foret did indicate that he spoke with the claimant on the

9

phone. However, the report indicated that this conversation only confirmed his recommendation of surgery rather than changed his mind, in that he stated "Since I saw him back then I felt like he needed cervical decompression, especially if he worsened and according to him now he states it has worsened."

The record does indicate that Dr. James Perry, orthopedist, indicated that the claimant did not need further treatment or surgery. However, the workers' compensation judge may accept or reject the opinion of medical experts based upon the impressions that expert makes upon the court. *Cannon v. Hamilton Transp.*, 06-1302 (La.App. 3 Cir. 2/7/07), 948 So.2d 1250, *citing Ivy v. V's Holding Co.*, 02-1927 (La.App. 1 Cir. 7/2/03), 859 So.2d 22, 28. Further, a court appointed IME's conclusion are entitled to great weight. *Fritz v. Home-Furniture Lafayette*, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132. Accordingly, we find that in the light of the evidence in the record, the workers' compensation judge did not err in awarding the claimant surgery. *Citgo*, 847 So.2d 734.

*SEBs*

The defendant contends that the workers' compensation judge erred in awarding the claimant SEBs in light of the fact that he was given a job in which he would have been able to make more than ninety percent of his average weekly wage. In her oral reasons for judgment, the workers' compensation judge stated:

> During some periods of time [the claimant's] light duty release, [the claimant] did not earn 90 percent of his average weekly wage. [The claimant] has indicated that he was unable to work and make 90 percent of his wages due to medical appointments, medical treatment, and/or medications. The light duty release from Business Health Partners was sufficient to show that [the claimant's] injury resulted in his inability to earn 90 percent or more of his pre-injury wages pursuant to La.R.S.

23:1221(3)(a)[3]. [The claimant's] post-trial brief outlines periods of time when he earned less than $493.38 or 90 percent of his average weekly wage. The defendant has failed to show that [the claimant] could perform the job during the time he was absent from work. Instead, he was not paid for not showing for work. According to Kevin Landrineau, department manager, he had to show for work or be at a doctor's appointment to get paid.

The record supports the workers' compensation judge's determination that the claimant was entitled to SEBs. A paycheck history submitted by the defendant indicated that the claimant earned less than ninety percent of his average weekly wage for a number of pay periods. At trial, the claimant confirmed that he was not paid for days where he was not at work due to headaches or other problems resulting from the accident. He testified that "Some days, some weeks I would get like 10 hours; some weeks I would get 20 hours. It's just all in - - in what I could do. I did the best I can do." In light of the payment history submitted by the defendant and the claimant's testimony, we find that the workers' compensation judge did not err in finding that the claimant was unable to earn ninety percent or more of the wages he earned at the time of the injury.

---

[3] Louisiana Revised Statutes 23:1221(3)(a) provides:

For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.

*Assessing Penalties in Light of La.R.S. 23:1208 and/or La.R.S. 23:1208.1*

The defendant argues that its claims under La.R.S. 23:1208 and La.R.S. 23:1208.1 are sufficient to controvert penalty and attorney fees claims, and thus no penalties or attorney fees should have been assessed against it. Specifically, the defendant argues, in brief "that penalties under [La.R.S.] 23:1201 could logically only pertain to payments that are found to be due and owing because to hold otherwise would result in absurd consequences and an unconscionable result - for example penalties and attorney fees for untimely payment of a medical bill by one day or miscalculation of the AWW by 12 cents when the claimant forfeited entitlement to all benefits by blatant fraudulent statements."

In the present matter, the workers' compensation judge assessed several penalties associated with the SEB award, the vocational rehabilitation award, the discography, medical bill payments, psychological treatment modalties, and the payment of the first installment of TTD benefits. We find no statutory authority or jurisprudence to suggest that the defendant's unproven claim of forfeiture of benefits, alone, reasonably controverts an award of penalties and attorney fees. *See Jeffers*, 7 So.3d 812; *Armand*, 2 So.3d 1272; *Anthony v. Southern Chevrolet Cadillac Inc.*, 05-711 (La.App. 3 Cir. 12/30/05), 918 So.2d 1070, *writ denied*, 06-253 (La. 4/24/06), 926 So.2d 553. Accordingly, we will address each of the defendant's assignments of error regarding the award of penalties.

Louisiana Revised Statutes 23:1201(F) subjects an employer or insurer to "penalties and attorney fees for failure to pay benefits owed, unless the claim is reasonably controverted or if the nonpayment results from conditions beyond the control of the employer or insurer." *Armand*, 2 So.3d at 1277-78. To reasonably

controvert a claim, an employer must have sufficient factual and medical support.

*Brown v. Texas-La Cartage, Inc.*, 98-1063, (La.12/1/98), 721 So.2d 885. In *Burks v. City Savings Bank*, 08-1556, p. 3 (La.App. 3 Cir. 5/6/09), 10 So.3d 365, 366-67, a panel of this court explained:

> Penalties and attorney fees are not due to a claimant where the employer has a bona fide dispute as to whether the employee is entitled to benefits. *Willis v. Alpha Care Home Health*, 01-638 (La.6/15/01), 789 So.2d 567. Additionally, an employer will not be penalized for bringing a close factual or legal issue to the court for resolution:
>
> > Whether an employer should be cast with penalties and attorney's fees is a finding of fact which will not be reversed in the absence of manifest error. *Barker v. Allen Canning Co.*, 95-252 (La.App. 3 Cir. 10/4/95), 663 So.2d 320; *writ denied*, 95-2688 (La.1/12/96), 666 So.2d 323. An employer will only be responsible for penalties and attorney's fees if it fails to reasonably controvert a workers' compensation claim, and if its failure to pay benefits is arbitrary, capricious, and without probable cause. La.R.S. 23:1201, 1201.2. However, an employer will not be penalized for bringing a close issue to court. *Granger v. Nelson Logging*, 96-223 (La.App. 3 Cir. 12/4/96), 685 So.2d 400.

*Fontenot*, 696 So.2d at 182.

Vocational Rehabilitation Penalties

The defendant argues that there was no obligation to provide vocational rehabilitation to the claimant as he was on a no-work restriction. *See Bennett v. Rapides Parish School Bd.*, 05-803 (La.App. 3 Cir. 2/22/06), 923 So.2d 843. In regard to the vocational rehabilitation penalties, the workers' compensation judge stated:

> The ultimate objective of vocational rehabilitation is to place the claimant back into a competitive position in the labor market so that his employment opportunities are maximized and the cost to the employer and the workers' compensation system are minimized. [The claimant] contends the initial notice and demand letter to the employer requested timely vocational rehabilitation services; however, none has been

13

provided. [The defendant] contends that they have no obligation to provide vocational rehabilitation because modified duty work was available to [the claimant] at Dunham Price. The record reflects that Dr. Lawrence Dilks recommended a vocational evaluation on February 12, 2008. That would have been appropriate. This issue was not reasonably controverted.

The record indicates that a demand for vocational rehabilitation was made on March 15, 2007. However, the no-work restriction was issued by Dr. Gunderson on April 20, 2007. At trial, the claimant asked the insurance adjuster the reason that vocational rehabilitation services were not tendered. The adjuster replied that "My understanding is that Dr. Gunderson still has [the claimant] off of work." However, there was no explanation as to why the demand for vocational rehabilitation services was not answered for the time period between March 15, 2007 and April 20, 2007. Accordingly, it was not in error for the workers' compensation judge to find that the defendant did not reasonably controvert the issue of vocational rehabilitation penalties.

Discogram

In regard to the discogram, the workers' compensation judge stated:

The discogram was approved by the court in a pretrial hearing. The discogram was initially approved by the adjuster on March 17, 2009.[4] On April 2nd, 2008, the approval was withdrawn. The adjuster comments to Ida in Dr. Gunderson's office, "we have elected to proceed with the I.M.E.'s physician's deposition." In April, Dr. Foret indicated the discogram was reasonable. In July of 2008, this court granted [the claimant's] request for authorization of the discogram. This matter was not reasonably controverted.

The defendant argues that the IME, Dr. Foret, opined that the discogram was inappropriate in his April 2008 deposition. The following exchange took place in that deposition:

_____

[4] While the workers' compensation judge's reasons for ruling indicate March 17, 2009, as the date of the authorization, the record indicates that this date should be March 28, 2008.

Q     And just so I'm clear, you - - I believe you said that you don't have a problem with Dr. Gunderson's recommendation about a discogram?

A     I do not.

Q     But as far as what you would recommend if he were your patient, then what you would recommend is that he not have the discogram until after the follow-up MRI, and in the event that the follow-up MRI showed a further degeneration of the two levels we were talking about earlier, then in that event, you would recommend that the discogram be performed.

A     Yeah, that's my recommendations. That's correct.

We find no merit in the defendant's argument that Dr. Foret opined that the discogram was inappropriate in the April 2008 deposition. The deposition indicates that while Dr. Foret did not recommend that the discogram be performed, he had no problem with Dr. Gunderson's, the treating physician's, recommendation that the discogram be performed. Accordingly, it cannot be said that the workers' compensation judge erred in assessing penalties in regard to this test.

Medical Bill Payments

The workers' compensation judge assessed penalties against the defendant for the untimely payment of certain medical bills dated July 10, 2006, and January 5, 2007. The workers' compensation judge stated that the "Defendants admitted that there was no explanation of why bills were not paid timely." Louisiana Revised Statutes 23:1201(E) provides that "Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." The defendant argues that the penalties were assessed in error because the claimant did not prove that the bills were not paid within sixty days of the date of receipt of those bills.

15

The record reveals that the bill dated July 10, 2006, was not paid until November 15, 2006. At trial, the following exchange took place between counsel for the claimant and the insurance adjuster:

> A. Oh, okay. Yes, AWCRX appears to not have been paid until November 2006 as far as the pharmacy that - -
>
> Q. All right.
>
> A. I don't have - -
>
> Q. Do you have an explanation of why it wasn't paid in a more timely fashion?
>
> A. No.
>
> Q. Within the 60 days?
>
> A. No.

Further, the record reveals that two bills dated January 5, 2007, and January 8, 2007, were not paid until April 20, 2007. In regard to these two bills, the insurance adjuster testified similarly about their untimely payment.[5] At trial, as evidenced above, the adjuster admitted that the bills were not timely paid within the sixty days

_____

[5] The following exchange took place between counsel for the claimant and the insurance adjuster:

> Q. I see. Well, we have a bill here that was incurred on 1-5 and 1-8 of '07, and it was not paid until 4-20 of '07 and you can look to confirm that?
>
> A. Yes. I have a copy there.
>
> Mr. Waltner:
> And, objection, 60 days' time from the date of service?
>
> MR. ZIMMERMAN:
> Yes, from the date of service.
>
> THE WITNESS:
> Correct, yes.
>
> Q. Okay. Do you have any reason why it was paid beyond the 60 days?
>
> A. No.

of receipt of those bills. Accordingly, the workers' compensation judge's assessment of penalties for failure to timely pay the above medical expenses is supported by the record.

Psychological Treatment

The workers' compensation judge assessed a penalty for the defendant's denial for psychological treatment, reasoning that "all physicians agree that further treatment is necessary for [the claimant]. The recommendations of the treating physician are given great weight, thus [the claimant] is entitled to psychological treatment." The defendant argues that this penalty was in error because, while the treating physician recommended psychological treatment, two other physicians, Dr. Culver and Dr. Strother, did not make the same recommendation.

In her oral reasons for judgment, the workers' compensation judge addressed the opinions of Dr. Culver and Dr. Strother, stating:

> Dr. Rennie Culver, psychiatrist, and Dr. Darren Strother, neuropsychologist, both examined [the claimant] at the request of the defendant. Both found that [the claimant] has a pain disorder and depression. Dr. Culver stated, "it is difficult to believe that [the claimant] would have serious psychiatric problems as a result of his occupational accident and the injury he sustained therein. While he obviously fractured his nose and probably had a cerebral concussion, he has recovered from the former and by now certainly has recovered from the latter." However, all physicians agree that further treatment is necessary for [the claimant].

The record supports this finding. In his report, Dr. Strother disagreed with some of the conclusions reached by Dr. Dilks but nonetheless opined that the claimant would "benefit from approximately six weeks of psychotherapy to address any psychological problems that might be related to the work injury." Further, Dr. Culver recommended that the claimant undergo further neuropsychological testing.

17

Accordingly, the record supports the workers' compensation judge's assessment of penalties in regard to the denial of psychological treatment.

Initial Installment Penalty

In regard to whether the initiation of indemnity benefits was paid timely, the workers' compensation judge stated:

> [The claimant] contends that payment of indemnity benefits was untimely. [The claimant] testified that he was off work for eight days with no pay when he had surgery on his nose immediately after the fall. The adjuster testified she received an off work slip around the beginning of May, 2007. [The claimant] argues the no work disability certificate issued by Dr. Clark Gunderson was forwarded by facsimile to defendant on April 20, 2007. The facsimile verification report from Mr. Jacques' [counsel for the claimant] indicates the off work slip was, in fact, sent by facsimile to Mr. Waltner's [counsel for defendant] office on April 20, 2007. On May 15, 2007, [the claimant] received a check from the defense in the amount of $1,421.92. La.R.S. 23:1201(B) states that, "the first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid." Since notice was sent to the defendant on April 20, 2007, the payment was due on the fourteenth day thereafter, or May 4, 2007. Payment was not made until May 15, 2007. This issue was not reasonably controverted.

The defendant argues that the payment was not due until May 11, 2007, according to La.R.S. 23:1201(B). Further, it asserts that it is the issuance date, not the receipt date, that determines whether an indemnity benefit check is timely. As such, it argues that its May 10, 2007 issuance was timely.

We find no merit in the defendant's argument. According to La.R.S. 23:1201(B), "[t]he first installment of compensation payable for temporary total disability . . . shall become due on the fourteenth day after the employer or insurer has knowledge of the injury[.]" Thus, we find no error in the workers' compensation judge's determination that payment was due on May 4, 2007. Accordingly, the

18

defendant's argument regarding receipt versus transmission is irrelevant at this time because under either interpretation of the law, the payment was untimely.

Failure to pay SEBs

In light of the discussion regarding the necessity of the SEBs award and the record's inclusion of the claimant's condition, we find that the workers' compensation judge in assessing penalties for the failure to reasonably controvert the payment of SEBs.

*Attorney Fees*

The claimant was awarded $16,000.00 in attorney fees. The defendant argues that this quantum should be decreased in that the workers' compensation judge should not consider any effort made by counsel in furtherance of penalty claims such as the surgery claim which the workers' compensation judge found to be reasonably controverted.

In *McCarroll v. Airport Shuttle, Inc.*, 00-1123, p. 9 (La.11/28/00), 773 So.2d 694, 700, the Louisiana Supreme Court stated:

> The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case.

In the present matter, the workers' compensation judge indicated that "This matter was most litigious. It required many pretrial hearings, a writ application, and motions." The record includes a fifteen-page Fee Petition submitted by counsel for the claimant, detailing the work performed in this matter. In light of the proceedings involved in this matter and the documentation provided by the claimant's counsel, we find no abuse of discretion in the award of $16,000.00 in attorney fees.

19

*Additional Attorney Fees on Appeal*

The claimant has answered the appeal, seeking additional attorney fees for this appeal. "This court has long held that an employee who successfully defends the workers'compensation judge's ruling should be entitled to additional fees." *Jeffers*, 7 So.3d at 821. Counsel for claimant is, therefore, entitled to additional fees in the amount of $3,000.00

**DECREE**

For the foregoing reasons, the judgment of the workers' compensation court is affirmed. Counsel for claimant is awarded $3,000.00 in additional attorney fees, and all other costs of this appeal are assessed against the appellant, Dunham Price, L.L.C.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED AS ORDERED.**