# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-81

DERICK WADE BURNETT

VERSUS

VECTOR ELECTRIC & CONTROLS, INC.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 08-21861
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED.**

John J. Simpson
Stockwell, Sievert, Viccellio,
Clements & Shaddock, LLP
Post Office Box 2900
Lake Charles, LA  70602
(337) 436-9491
COUNSEL FOR DEFENDANT/APPELLANT:
    Vector Electric & Controls, Inc.

Jason Bell
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA  70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLEE:
    Derick Wade Burnett

AMY, Judge.

The claimant allegedly sustained injuries in a work-related accident. The claimant filed suit against the defendant employer, seeking authorization and payment for shoulder surgery. The defendant contends that the claimant forfeited benefits for what it asserted were fraudulent statements concerning his medical history. The workers' compensation judge entered judgment in favor of the claimant, ordering the defendant to authorize and pay for the surgery. Both parties appeal. For the following reasons, we affirm.

## Factual and Procedural Background

The claimant, Derick Wade Burnett, alleges that on March 3, 2007, while working for the defendant employer, Vector Electric & Controls, Inc., as an electrical helper, he sustained an injury to his left shoulder when he was pulling a wire cable and heard "a loud popping sound." The record indicates that the claimant sought medical treatment at Business Health Partners, where he was referred to Dr. Alan Hinton, an orthopedic surgeon.

On March 30, 2007, Dr. Hinton recommended surgery to repair a dislocation, lesion, and fracture in the claimant's shoulder. The defendant approved the surgery, which took place on April 26, 2007. After the surgery, the claimant continued to complain of pain and instability in his left shoulder. In response, Dr. Hinton referred the claimant to another orthopedic surgeon and shoulder specialist, Dr. Bradley Edwards. After his first examination, Dr. Edwards diagnosed the claimant with "recurrent anterior shoulder dislocation" with "failed prior operation." Dr. Edwards recommended that the claimant undergo another surgery, an iliac bone graft of the glenoid, in order to stabilize his shoulder. The defendant approved this surgery, which subsequently took place on June 27, 2007.

In his deposition, Dr. Edwards explained that the claimant related to him that the pain in his shoulder had "gotten worse, not better" after the June 2007 surgery. After the claimant underwent further testing, Dr. Edwards recommended that the claimant undergo another procedure to "scope his shoulder" and determine whether there was any tearing or fraying of the shoulder. Dr. Edwards also determined that the claimant's pain may be caused by hardware in his shoulder, which was placed there from the previous surgeries and could be removed at the time of the scope. [1]

At this point, the claimant again sought the defendant's approval of the recommended surgery; however, the defendant denied the claimant's request. This matter was instituted on October 9, 2008, when the claimant filed a "Disputed Claim for Compensation" seeking the authorization of shoulder surgery. The defendant answered the claim, asserting that the claimant had forfeited benefits under La.R.S. 23:1208 and La.R.S. 23:1208.1. In a pre-trial statement, the defendant contended that the claimant, "failed to disclose very serious medical problems and treatment when asked direct questions under oath in violation of" La.R.S. 23:1208. Further, it contended that the claimant "failed to disclose the seriousness and extent of his prior shoulder injuries when he answered a second injury questionnaire prior to his employment[.]" La.R.S. 23:1208.1.

---

[1] In his deposition, Dr. Edwards stated the following:

Now, do I think that the hardware is necessarily causing his pain? Probably not, because most people that have that phenomenon usually will complain about this posterior shoulder pain or pain in the back of the shoulder probably where the screw's going to come out into the muscle a little. They never really stop complaining over time. Now, he didn't complain for a while, so I am less optimistic saying, oh, I take these screws out and your pain's going to go away. Where somebody that is complaining the whole time, we say, we take the screws out, your pain will get better and it almost always does; but, you know, if we're going to scope him and put him to sleep, you know, I think you take the screws out to just eliminate one more thing that could be a potential source.

The workers' compensation judge issued judgment on November 10, 2009, ordering the defendant to authorize and pay for the claimant's requested surgery. Further, it found no violation of La.R.S. 23:1208 or La.R.S. 23:1208.1 and denied the claimant's request for penalties and attorney fees.

The defendant appeals and argues that the workers' compensation judge erred in failing to find that the claimant forfeited benefits under La.R.S. 23:1208 and La.R.S. 23:1208.1. The claimant answers the appeal and asserts that the workers' compensation judge erred in not assessing penalties and attorney fees against the defendant for its failure to authorize surgery.

## Discussion

*Forfeiture under La.R.S. 23:1208*

The defendant asserts that it proved a violation of La.R.S. 23:1208 due to the claimant's failure to disclose his "real medical history to both of his treating physicians." To support its position, the defendant points to several emergency room records in 2005 and 2006 in which the claimant complained of shoulder dislocation and indicate that the claimant related a history of dislocation of his left shoulder to the treating medical providers. The defendant then points to the medical records of the treating physicians, Dr. Hinton and Dr. Edwards, which do not indicate that the claimant related any history of shoulder dislocations to them. In a deposition, the defendant asked Dr. Edwards whether the claimant told the doctor about any prior left shoulder problems. Dr. Edwards responded, "If he did, I did not note it, and I usually do note that as well." Dr. Hinton also answered negatively in response to whether the claimant discussed with him his previous shoulder problems.

3

Louisiana Revised Statutes 23:1208, entitled "Misrepresentations concerning benefit payments; penalty[,]" provides in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

To successfully assert a defense under La.R.S. 23:1208, the employer must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12. The *Resweber* court explained that:

> [T]he statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are *willfully made for the purpose of obtaining benefits*. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id.* at 16.

Here, in its oral reasons for judgment, the workers' compensation judge stated the following:

> The employer argues that [the claimant] conveniently omitted telling his employer that his shoulder had been dislocated at least two times before the accident and that he tailored his accident story to somehow manage to get his old injuries covered by the workers' compensation system.
>
> The defense put on evidence to show that, indeed, [the claimant] did not tell his workers' compensation treating physicians about visits to the emergency room seeking treatment for shoulder problems. This

4

omission, the employer contends, amounts to deceit and reflects a deliberate attempt to defraud.

For his part, [the claimant] readily admits that he did not disclose to his treating physicians every problem he's had with his left shoulder since he first dislocated it when he was about 15 years old. In the first place, he testified, he did not and does not remember all the dates, times, and places, but more important, he said was the fact that the March 2007 incident created a problem which was entirely different from the one that he had before that date. The pain experienced was more severe and decidedly different, he testified.

The explanation finds some support in the medical and live testimony which indicates that prior to the March 2007 accident, apparently no physician had ever recommended any sort of surgery on [the claimant's] left shoulder. . . .

I suppose the situation would be different if [the claimant] told his treating physicians in clear and unmistakable terms that his left shoulder was just fine until March 17 and then became disabling. That's just not the case here.

. . . .

The language used by [the claimant] when he was deposed by defense counsel does not paint a portrait of a sly conniver. He explained that there were at least two occasions where he remembered when his left shoulder either popped out or was dislocated and that there might have been more. Now, [the claimant] is not all that articulate, but he did make it clear that he may very well have had other shoulder problems, but they paled in comparison to the 2007 incident.

A workers' compensation judge's determination related to a forfeiture defense is subject to the manifest error/clearly wrong standard of review. *Doyal v. Vernon Parish Sch. Bd.*, 06-1088 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190. A review of the record in the present matter supports the workers' compensation judge's determination that the claimant did not willfully make false statements to obtain workers' compensation benefits. The record reveals that the claimant failed to tell either Dr. Hinton or Dr. Edwards about prior problems with his shoulder; however, the claimant explained at trial that his omissions were

5

because he either did not remember the events or, as explained by reference to his deposition, did not find it relevant because "it wasn't nothing bad like this was." Further, when Dr. Hinton was asked whether information about the claimant's prior dislocation was important in the terms of diagnosing the claimant, Dr. Hinton responded that "it may have been somewhat helpful, but it doesn't change, wouldn't have changed my course of action on the diagnosis."

The record also reveals that on the day of the accident, a "Progress Record" was filled out by the defendant's medical department. On that report, there is a notation that the claimant related a history of "sublaxing/dislocating shoulder." Further, it stated that the claimant's "last dislocation age 15; several sublaxtions since then." This "Progress Record" indicates that the claimant, before visiting either Dr. Hinton or Dr. Edwards and immediately following the accident, directly related to the defendant a history of shoulder dislocations. This history supports the workers' compensation judge's determination that the claimant's omissions were not made for the purposes of obtaining workers' compensation benefits.

Accordingly, after a review of the record, we find no manifest error in the denial of the defendant's forfeiture defense under La.R.S. 23:1208.

*Forfeiture under La.R.S. 23:1208.1*

The defendant contends that the workers' compensation judge erred in denying its claim for forfeiture under La.R.S. 23:1208.1, as the claimant failed to disclose previous shoulder injuries in his post-hire employment health questionnaire.

Louisiana Revised Statutes 23:1208.1 provides:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said

6

failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

To prevail under La.R.S. 23:1208.1, the employer must prove the existence of "(1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute." *Jeffers v. Kentucky Fried Chicken*, 08-1380, p. 8 (La.App. 3 Cir. 4/1/09), 7 So.3d 812, 820, *writ denied*, 09-956 (La. 6/19/09), 10 So.3d 738 (citing *Nabors Drilling USA v. Davis*, 03-136 (La. 10/21/03), 857 So.2d 407).

In the present matter, the workers' compensation judge addressed this issue in its oral reasons for judgment, stating:

It is undoubtedly accurate to say that [the claimant's] responses to questions posed by his physicians and asked of him on post-hiring questionnaires could have, and perhaps should have, been more accurate; however, it takes a real effort at purposeful parsing to read into his answers a cunning, concerted, and calculated effort to defraud anyone. On the first page of the employment questionnaire, he checked yes to the question as to whether he had had rotator cuff injury, explaining that seemed to him to be the closest description to his shoulder problem. That response seemed fine with the employer at the time.

The post-hiring questionnaire, submitted into evidence by the defendant, includes a "medical history" section which directs the person filling out the form to "check in the appropriate space whether or not you currently have or previously have had any of the following medication conditions." The claimant's questionnaire indicates that he checked "yes" under the box entitled "rotator cuff injury." On the form when asked to explain, the claimant wrote "Dislocated left shoulder when I was

7

a kid. Went to ER. Put it back in place. Fine now." At trial, the claimant testified that when filling out the form:

> I can't remember what I put on there but my shoulder but I know I put something because I wasn't sure exactly, you know, what was wrong with my shoulder; but I think I put something on there about it becoming dislocated but it was fine now because I had worked a harder job before that one and it was - - it was fine.

The defendant argues that the claimant's failure to include portions of his medical history related to his left shoulder "prevented the employer from gaining that knowledge and, thus, prejudiced the employer's ability to obtain second injury recovery."

As explained above, to prevail under La.R.S. 23:1208.1, the employer must prove the existence of an untruthful statement. *Jeffers*, 7 So.3d 812. Lack of proof as to this element is fatal to the employer's claim of forfeiture. *Id.* As indicated in its oral reasons for judgment, the workers' compensation judge found that the claimant did not supply to the defendant an untruthful statement; rather he found that the claimant described his shoulder problem to the best of his ability at the time of filling out the form. This determination is supported by the record. The medical records on which the defendant relies do not indicate that the claimant underwent shoulder surgery or that shoulder surgery was ever recommended to the claimant. Neither do they indicate that the claimant was diagnosed with any particular condition that he failed to disclose on his post-hiring questionnaire. It appears that when the claimant completed his post-hiring questionnaire for the defendant, he was aware that he did have previous problems with his shoulder and indicated such.

Accordingly, we find no error in the workers' compensation judge's determination that the defendant failed to prove forfeiture under La.R.S. 23:1208.1

8

*Penalties and Attorney Fees*

In his answer to the appeal, the claimant contends that the workers' compensation judge erred in failing to award penalties and attorney fees for the defendant's failure to pay medical benefits.

Louisiana Revised Statutes 23:1201(F) subjects an employer to "penalties and attorney fees for failure to pay benefits owed, unless the claim is reasonably controverted or if the nonpayment results from conditions beyond the control of the employer or insurer." *Armand v. Denton-James, L.L.C.*, 08-920, p. 9 (La.App. 3 Cir. 2/4/09), 2 So.3d 1272, 1277-78. In *Burks v. City Savings Bank*, 08-1556, p. 3 (La.App. 3 Cir. 5/6/09), 10 So.3d 365, 366-67, quoting *Fontenot v. J.K. Richard Trucking*, 97-220, pp. 12-13 (La.App. 3 Cir. 6/4/97), 696 So.2d 176, 182 (citations omitted) a panel of this court explained:

> Penalties and attorney fees are not due to a claimant where the employer has a bona fide dispute as to whether the employee is entitled to benefits. Additionally, an employer will not be penalized for bringing a close factual or legal issue to the court for resolution:
>
> > Whether an employer should be cast with penalties and attorney's fees is a finding of fact which will not be reversed in the absence of manifest error. An employer will only be responsible for penalties and attorney's fees if it fails to reasonably controvert a workers' compensation claim, and if its failure to pay benefits is arbitrary, capricious, and without probable cause. La.R.S. 23:1201, 1201.2. However, an employer will not be penalized for bringing a close issue to court.

Here, the workers' compensation judge addressed the claimant's request for penalties and attorney fees, stating:

> I do agree with the defense that the employer's investigation did unearth enough information to legitimize the litigation it brought here. No employer should be penalized for bringing a close legal issue to the Court for a decision. [The claimant's] responses, although not laced

9

with fraudulent intent, are sufficiently cloudy to cause the employer legitimate concerns.

Under these circumstances, no penalty and attorney's fees should be due.

At trial, Ramsey Grant Horn, the defendant's insurance claims representative, testified that the claimant's benefits were not terminated after the discovery of the medical records that revealed prior shoulder dislocations and injuries suffered by the claimant. Mr. Horn testified that instead of terminating benefits, it was thought to "be better for a hearing officer to make that determination." In its oral reasons for judgment, the workers' compensation judge indicated that he agreed that the "unearth[ing]" of the previous medical records "legitimize[d] the litigation it brought here." As stated above, the worker's compensation judge found that the alleged fraudulent statements were "sufficiently cloudy" to cause the employer concerns. The record supports the workers' compensation judge's determination that the present matter was a bona-fide dispute. In accordance with the jurisprudence cited above, we find no error in the workers' compensation judge's decision to not assess penalties and attorney fees against the defendant. Similarly, we deny the claimant's request for attorney fees for the preparation of this appeal.

## DECREE

For the foregoing reasons, the judgment is affirmed. All costs of this proceeding are assessed against the defendant-appellant, Vector Electronic & Controls, Inc.

**AFFIRMED.**