# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1554

DORRIE BELL

VERSUS

## OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 08-00908
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir and Marc T. Amy, Judges.

**AFFIRMED.**

**Saunders, J., dissents and assigns written reasons.**

> Philip E. Roberts
> Leake & Andersson, LLP
> P. O. Drawer Z
> Lafayette, LA   70502
> (337) 233-7430
> COUNSEL FOR DEFENDANT/APPELLEE:
> > Our Lady of Lourdes Regional Medical Center, Inc.

> John G. Munoz
> Garner & Munoz
> 1010 Common Street, Suite 3000
> New Orleans, LA   70112-2411
> (504) 581-7070
> COUNSEL FOR CLAIMANT/APPELLANT:
> > Dorrie Bell

AMY, Judge.

The claimant alleged that she sustained a neck injury while moving dirty linens in her capacity as a housekeeper for the employer. The employer denied benefits, contesting the occurrence of a work-related accident. The employer later terminated the claimant's employment. After a hearing, the workers' compensation judge found that the claimant failed to meet her burden of proving that she sustained a compensable accident. The claimant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

Dorrie Bell, the claimant, initiated this workers' compensation matter due to her assertion that she sustained neck and back injury in her employment as a housekeeper with Our Lady of Lourdes Regional Medical Center. The claimant alleged that, on August 20, 2007, she and a co-worker were pushing/pulling a linen cart when she felt a pulling in her neck. Later that morning, the claimant continued to feel the pain in her neck and, according to her testimony, felt that pain through her right side.

That same morning, the claimant reported to St. Claire's clinic, which the record reflects offers medical care to the hospital's employees. She was treated by Nurse Practitioner Amelie Hollier. Nurse Practitioner Hollier diagnosed the claimant as having sustained a cervical strain. During that time period, an accident report was completed. Thereafter, the claimant was returned to work at light duty. Also on that day, the claimant was interviewed by Penny Thibodeaux, the employer's workers' compensation coordinator, where she reported neck injuries.

Thereafter, on August 22nd, two days following the alleged accident, the claimant returned to the clinic for a follow up visit. At that time, Ms. Hollier's notes reflect that the claimant's neck pain had resolved and that she denied injury to her

lower back.  However, the claimant reported that her buttock area would "lock when getting up."  The records from the visit reveal that Darvocet had been prescribed for "LBP," but that "this is not due to her workers comp injury[.]"

The following day, August 23rd, the employer terminated the claimant's employment.  It also denied further compensation benefits.  The employer's "Termination Report" listed "Falsification upon employment" as the explanation for the termination of employment.

The claimant later instituted this matter in January 2008, seeking an award of medical treatment and indemnity benefits.  In response, the employer asserted that the claimant willfully made false statements or representations in connection with the claim and, further, that she failed to truthfully answer the health questionnaire completed at the time of her employment.

Following a hearing, the workers' compensation judge determined that the claimant failed to prove the occurrence of a compensable accident, thereby defeating her claim for benefits.  The workers' compensation judge further rejected the defendant's assertions of fraud arising under La.R.S. 23:1208 and La.R.S. 23:1208.1.[1]

---

[1] In rejecting the employer's claim, the workers' compensation judge stated:

> I do not agree with the hospital's contention that Ms. Bell committed fraud, an act which requires a willful knowing attempt to cheat and steal.  The defendant fell short, well short of providing support for that claim.  The hospital's contention that Ms. Bell committed fraud under either 23:1201 [sic] or 23:1201.1 [sic] are both denied.
> The Court's ruling is that Ms. Bell did not sufficiently prove her claim but also that she did not commit fraud.

The employer has not independently appealed this determination in the event the claimant is successful in her appeal.  We, therefore, do not discuss this aspect of the ruling.

The claimant appeals, asserting that the workers' compensation judge erred in (1) finding that the claimant did not prove that she was injured in a work-related accident; (2) finding that the medical evidence did not support a finding of work-related injury and in admitting into evidence the ISO report and related correspondence; and in (3) accepting the testimony of a nurse-employee of the defendant over the claimant's physicians and diagnostic testing.

**Discussion**

*Occurrence of Accident*

Each of the claimant's three assignments of error address the workers' compensation judge's determination that the claimant failed to prove that her injuries resulted from a work-related injury.

If not otherwise eliminated, a claimant is entitled to workers' compensation benefits for "'personal injury by accident arising out of and in the course of his employment.'" *Ardoin v. Firestone Polymers, L.L.C.*, 10-0245, p. __ (La. 1/19/11), __ So.3d __, ___, quoting La.R.S. 23:1031(A). Louisiana Revised Statutes 23:1021(1) defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." The claimant has the burden of proving the work-related accident. *Ardoin*, __ So.3d __.

In this matter, the claimant produced no witness to the alleged accident. Rather, Mary Soloman, who was assisting the claimant with the linen cart at the time, testified that she did not know that the claimant had injured herself. She similarly denied witnessing an accident when she was contacted by Ms. Thibodeaux on the

3

afternoon of August 20th, the date of the alleged accident. Despite the lack of a witness to the accident, a claimant can establish its occurrence if: 1) no other evidence discredits or casts serious doubt upon the claimant's version of events; and 2) the claimant's account is corroborated by circumstances following the alleged accident. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). Further, the factfinder should accept a claimant's uncontradicted testimony regarding the occurrence of an unwitnessed accident absent circumstances casting suspicion on that testimony. *Id.* On appeal, we consider a workers' compensation judge's determination regarding whether the claimant has sustained his or her burden of proof under the clearly wrong or manifest error standard. *Id.*

In reasons for ruling, the workers' compensation judge concluded that the claimant failed to satisfy her burden of proof, stating:

> It appears from the evidence, both documentary and live testimony, that after she was discharged and thus, denied medical care by her employer, Ms. Bell sought treatment initially from a physician recommended by her attorney.

> Defense counsel, politely and professionally, but very pointedly, explained to the Court that the physician Ms. Bell saw was affiliated with a clinic that catered to personal injury plaintiff lawyers. And that does appear to be the situation here. In general, I find it just a touch disingenuous for an employer to express an overabundance of concern about the pedigree and professional panache of a physician who treats an employee who has absolutely no place else to go for medical care except at a charity hospital. Defense's point is well taken.

> However, a Worker's Compensation Court would be hard pressed to function if it were constrained to consider only those medical opinions from physicians who are certifiably evenhanded, pure of heart and totally dismissive of the profit motive. Medical opinions say what they say, and the physicians who write them, are who they are. We all understand that.

> The medical reports in the instant trial are predictably, contradictory. The claimant's physician is certain that the accident is work related. The defense's physician is positive that it's not. They

4

both expressed their respective views, clearly and explained them in detail. Much can be learned from both of them, however, neither, in and of itself, is dispositive here.

What is clear is that Ms. Bell is no stranger to neck and back pain for a variety of reasons. She also has a record of working at various jobs for several years before the incident at Lady of Lourdes. Given her spinal condition, it is not unlikely or even improbable that she did, in some fashion, suffer some aggravation to her back, leg, and knees while she was pushing the laundry cart. It certainly could have occurred. There is an even chance that it did. But, that's not the level of proof required by law on the part of a claimant.

Ms. Hollier, the registered nurse, who examined Ms. Bell at the employee's clinic, provided lengthy and well-considered testimony. She is the registered nurse who initially examined Ms. Bell at the clinic. Ms. Hollier, who is a certified nurse practitioner, explained carefully and logically her reasons for being, as she put it "suspicious" of Ms. Bell's complaints. She found the claimant's story entirely inconsistent with the normal and customary complaints of someone who has recently sustained a serious neck and back injury. Ms. Hollier was both credible and convincing.

During the testimony at trial, representatives of the hospital express puzzlement and indeed skepticism about Ms. Bell's recitation of events surrounding her accident. I decidedly did not get the impression that the hospital was hard at work trying to disprove Ms. Bell's story. After all, this is not an uncommon occurrence. The fact is that the information Ms. Bell provided would force a reasonable person to conclude that her story is simply unverifiable.

After review of the record, we find no manifest error in this determination that the claimant failed to sustain her burden of proof in proving the occurrence of a compensable accident by a preponderance of the evidence.

Certainly, the medical evidence in this case establishes that the claimant was ultimately discovered to have disc protrusion in the cervical spine.[2] However, the record does not otherwise demand a determination that the claimant proved that her

---

[2] The claimant's treating physician opined that the claimant's condition was related to the alleged accident, whereas the employer submitted an opinion from an examining physician who reported that: "I believe that this represents a chronic degenerative type process and does not reflect an acute injury or direct relationship to the described mechanism of pushing a linen cart."

condition resulted from a compensable work-related accident. As stated above, the claimant, alone, testified regarding the occurrence of the accident. Ms. Soloman, her partner in moving the linen cart, denied knowing of such an occurrence when questioned by Ms. Thibodeaux on the day of the alleged accident and did so again at trial. Thus, the alleged accident was unwitnessed.

As stated above, in order for a claimant to satisfy his or her burden of establishing an unwitnessed accident, the *Bruno* factors must be satisfied. This matter fails due to the first *Bruno* requirement that no other evidence must discredit or cast serious doubt on the claimant's account of events. *Bruno*, 593 So.2d 357. In addition to Ms. Soloman consistent denial of being aware of the accident, Don Guidry, the claimant's supervisor, denied that the claimant reported a work-related accident to him, although such a report was required by work-place policy. Instead, he could recall that the claimant stated to him that she had a "crick" in her neck. Also, the medical records from the claimant's visit indicate that Nurse Practitioner Hollier noted that, despite her complaint of neck pain, "when distracted by non medical questions - [the claimant] moves neck easily[.]" She described this as "significant" because the claimant did not demonstrate loss of range of motion in the neck.

Finally, the claimant denied prior accidents and injuries to her neck in her employment questionnaire and upon pointed questioning by Ms. Thibodeaux. The transcript of the claimant's statement to Ms. Thibodeaux was introduced into evidence and includes the claimant's denials. Ms. Thibodeaux testified that, despite these denials, she became aware of two accidents, one in 1990 and one in 1996, involving the claimant undergoing treatment for neck pain.[3]

---

[3] The claimant questions the admission into evidence of the "ISO Report" relied upon by Ms. Thibodeaux. She contends that it was impermissible hearsay of the 1996 accident. However, we

In this case, the claimant alone testified as to the occurrence of the accident. Although she visited the nurse practitioner and related her pain to the purported accident, the occurrence was unwitnessed due to her co-workers' denial of the event. Other evidence impeached the claimant's credibility insofar as she denied prior injury to the neck. Thus, the workers' compensation judge was not manifestly erroneous in determining that the claimant failed to establish her case, insofar as, under the dictates of *Bruno*, 593 So.2d 357, other evidence discredited or cast serious doubt on her version of events. Therefore, we affirm the workers' compensation judge's ruling.

We observe that much of the claimant's brief, including her third assignment of error, addresses the question of whether she presented sufficient evidence that the alleged accident caused her purported injuries. In particular, her third assignment addresses whether the workers' compensation judge should have placed greater weight on her own treating physician's testimony regarding causation. However, this case is resolved by consideration of the preliminary question of whether she proved a work-related accident. Accordingly, we do not reach the specific causation issue.

## DECREE

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. All costs of this appeal are assigned to the appellant, Dorrie Bell.

**AFFIRMED.**

---

note that Ms. Thibodeaux testified regarding her awareness of the accident and, furthermore, that the workers' compensation judge admitted both the ISO Report and a related letter, stating that: "Yes, it is hearsay but I'm going to admit it as hearsay understanding that it is hearsay and just admitting it as to the weight." On review, we reference Ms. Thibodeaux's testimony rather than the contents of the exhibit.

7

**Dorrie Bell v. Our Lady of Lourdes**

**SAUNDERS, Judge, dissents and assigns written reasons.**

Claimant was injured while pushing a 200 pound laundry cart, a task normally reserved for employees with stronger physical abilities, but which was extraordinary work for this Ms. Bell. Before pushing the cart she had no complaints. Shortly after pushing the cart she began to notice that she had a problem.

While co-worker Solomon and supervisor Guidry could not recall claimant notifying them soon after the event, it is uncontradicted that Ms. Bell did notify co-worker Faulk, Nurse Practitioner Hollier, and Workers Compensation Coordinator Thibodeaux.

In my view, this record supports a finding for Ms. Bell as it shows that she sufficiently proved that a workplace accident had occurred.

> [I]t is immaterial that [Claimant] could not identify the exact movement she was making or item she was handling at the time of the sudden onset of pain. Importantly, "[t]he 'actual, identifiable, precipitous event' may include a routine movement or task that the employee regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury." *Thompson v. Orleans Parish Sch. Bd.*, 00-1230, p. 3 (La.App. 4 Cir. 3/21/01), 786 So.2d 128, 130. Further, "[a]lthough the definition of accident was amended to emphasize that the identifiable, precipitous event must be more than a gradual deterioration or progressive degeneration, jurisprudence holds that these terms do not exclude those instances where a worker can establish a work-related event, which may seem to be a customary or routine work activity, which results in an injury to the employee." *Richard v. Workover & Completion*, 00-794, p. 4 (La.App. 3 Cir.

12/6/00), 774 So.2d 361, 364. Thus, we find no merit in this assignment of error and affirm the finding that an "accident" occurred within the meaning of La.R.S. 23:1021(1).

*McCall v. Wal-Mart Stores, Inc.*, 02-1343, p.3 (La. App. 3 Cir. 3/5/03), 846 So.2d 832, 835-36, *writ denied*, 03-1343 (La. 9/19/03), 853 So.2d 641.

The facts of the present case show that an accident did occur and was reported timely. Certainly, the facts here are at least as strong as those we affirmed in *McCall*.

The workers compensation judge here was apparently focused disproportionately on Ms. Bell's inability to identify a precise moment or movement that caused her injury, but that should not have been determinative. What should have been determinative was that she showed that her injury was caused by pushing a heavy cart, which was not a part of her ordinary job duty. By contrast, this Court found in favor of the claimant in the McCall case who was performing her ordinary tasks as a cashier when she began to feel tired. Accordingly, I respectfully dissent.