# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## WCA 12-727


JASON D. DUGAS

VERSUS

AUTOZONE, INC., ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - NUMBER 3
PARISH OF CALCASIEU, NO. 10-10031
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**AFFIRMED AS AMENDED.**


**Marcus Miller Zimmerman**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Jason D. Dugas**

**B. Scott Cowart**
**Taylor, Wellons, Politz & Duhe**
**7924 Wrenwood Blvd, Ste C**
**Baton Rouge, LA 70809**
**(225) 387-9888**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Firestone Complete Auto Care**

**David Clay Clarke**
**Williams & Associates, LLC**
**P.O. Box 54024**
**Lafayette, LA 70505-4024**
**(337) 289-6555**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **AutoZone, Inc.**

**EZELL, Judge.**

Firestone Complete Auto Care appeals a judgment from the Office of Workers' Compensation awarding Jason Dugas temporary total disability benefits as well as medical benefits. Firestone alleges that Mr. Dugas is not entitled to benefits for several reasons. Firestone argues that Mr. Dugas made false statements in violation of La.R.S 23:1208 and his claim should have been dismissed. Alternatively, it argues that Mr. Dugas failed to establish that an accident occurred or that the accident at Firestone was the sole cause of his alleged disability. Firestone also complains about the award of penalties and attorney fees. For the following reasons, we affirm the judgment of the Office of Workers' Compensation and award additional attorney fees.

## FACTS

On May 3, 2010, Jason Dugas was working at AutoZone in Lake Charles, when he slipped and fell in a puddle of water outside the restroom, landing on his tailbone. He reported the accident but did not miss any time from work nor did he seek medical attention. Seeking a higher-paying job, Mr. Dugas left his employment with AutoZone and went to work for Firestone. Mr. Dugas began work with Firestone on June 14, 2010.

At Firestone, Mr. Dugas was classified as a C class technician. His duties involved general maintenance of vehicles which included vehicle inspections, oil changes, and tire changes. In late August 2010, Mr. Dugas was assigned a ticket for a vehicle to change all four tires. He went to the stock room to retrieve the tires. The tires he needed were on the top shelf, so he used an A-frame ladder to reach the tires. Mr. Dugas was yanking on a tire when he fell to the concrete floor. He landed on his lower back. Mr. Dugas laid on the floor for a minute and then called Terry Guillory, a coworker, for help.

Mr. Guillory heard his name whispered, so he walked to the back where he saw Mr. Dugas laying on the floor, flat on his back. Mr. Guillory helped Mr. Dugas sit up and then went to get Mike Trahan, the service manager. As Mr. Guillory and Mr. Trahan were talking, Mr. Dugas walked up and told them he was doing ok and did not need medical treatment. Mr. Dugas continued working.

On September 16, 2010, Mr. Dugas went to see Dr. Shaine Rider, a chiropractor. Dr. Rider observed spasm and edema along the neck. He also noted swelling in the upper back and in both sacroiliac joints. Mr. Dugas began treatment on September 20, 2010, at which time he quit work with Firestone because his back was hurting too much. Dr. Rider treated Mr. Dugas until November 8, 2010.

Mr. Dugas saw Dr. Clark Gunderson, an orthopedic surgeon, on November 9, 2010. Mr. Dugas reported that there was pain in his lower back which extended into his buttocks and thighs as far as his knees. The pain was aggravated by standing and sitting and relieved with heat. Dr. Gunderson recommended an MRI and referred him for physical therapy. He prescribed pain medication, muscle relaxants, and anti-inflammatory agents and placed Mr. Dugas on a no-work status.

An MRI on February 22, 2011, indicated that Mr. Dugas had a narrowed spinal canal with disk protrusions at L4-5 and L5-S1. After Dr. Gunderson saw Mr. Dugas on March 11, 2011, he recommended epidural steroid injections.

Dr. James Eddy with the Interventional Pain Management Clinic administered epidural injections on May 4 and June 8, 2011. After the second injection, Mr. Dugas did not get relief from the pain and reported incontinence problems. Dr. Gunderson then referred Mr. Dugas to Dr. Erich Wolf, a neurosurgeon.

Dr. Wolf examined Mr. Dugas on June 30, 2011. Mr. Dugas reported low back pain radiating into his right lower leg. Dr. Wolf reviewed the MRI and observed a

disc bulge with central disc protrusion with an annular tear at L4-5 resulting in impingement on the central aspect of the thecal sac. A disc bulge with a left paracentral disc protrusion at L5-S1 resulting in an impingement on the central and left aspect of the thecal sac was also observed.

Mr. Dugas filed a disputed claim for compensation on October 25, 2010, against both AutoZone and Firestone. Trial in the matter was held on December 19, 2011. In oral reasons for judgment the workers' compensation judge (WCJ) found that Mr. Dugas did not commit fraud in trying to obtain benefits. The WCJ further found that Mr. Dugas suffered a work-related accident at Firestone and that Mr. Dugas's present injury was due solely to his fall at Firestone. Therefore, the WCJ granted AutoZone's motion for involuntary dismissal. The WCJ awarded Mr. Dugas temporary total disability benefits from September 20, 2010, in the amount of $293.33 per week. Mr. Dugas was also found to be entitled to medical treatment and payment of his medical expenses. The WCJ concluded that Firestone had improperly denied Mr. Dugas's claim for workers' compensation benefits and awarded a $2,000.00 penalty in addition to a $2,000.00 penalty for refusal to pay medical benefits. Mr. Dugas also received $15,000.00 in attorney fees.

Firestone appeals the judgment arguing that Mr. Dugas committed fraud in making multiple false statements in discovery, to his doctors, and to the court. Firestone also claims that Mr. Dugas's story that he fell from the ladder at Firestone was seriously discredited. Firestone further alleges that even if Mr. Dugas did establish a work-related accident, his alleged disability was caused by a pre-existing degenerative back syndrome and chronic obesity. Firestone also argues that even if Mr. Dugas's disability was caused by an accident, it resulted from both the AutoZone

3

accident and the Firestone accident. Lastly, Firestone argues that it reasonably controverted Mr. Dugas's claim.

## FRAUD

Firestone argues that Mr. Dugas's testimony is so internally inconsistent and contradicted by documents that no reasonable fact finder would credit his story. Firestone claims that Mr. Dugas willfully concealed his prior injuries involving the same body part.

Pursuant to La.R.S. 23:1208, a claimant forfeits benefits when he makes a false statement in seeking to obtain benefits. To prevail under this statute, an employer must prove "'that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.'" *Burnett v. Vector Elec. & Controls, Inc.*, 10-81, p. 4 (La.App. 3 Cir. 6/2/10), 40 So.3d 477, 480 (quoting *Resweber v. Haroil Constr. Co.*, 94-2708, (La. 9/5/95), 660 So.2d 7).

Louisiana Revised Statutes 23:1208.1 also provides for the forfeiture of benefits when a claimant fails to disclose previous injuries to an employer who inquires about them. In order to prevail under La.R.S. 23:1208.1, an employer must prove "'(1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute.'" *Burnett*, 40 So.3d at 482 (quoting *Jeffers v. Kentucky Fried Chicken*, 08-1380, (La.App. 3 Cir. 4/1/09), 7 So.3d 812, *writ denied*, 09-956 (La. 6/19/09), 10 So.3d 738). A WCJ's determination regarding forfeiture of benefits is subject to the manifest error/clearly wrong determination. *Burnett,* 40 So.3d 477.

In oral reason for judgment, the WCJ stated that "[t]he conduct of Mr. Dugas simply does not paint a portrait of an individual set and determined to commit fraud.

4

Rather, it tends to show an individual, who does not present well in the job market, trying to get and keep a job."

Admittedly, Mr. Dugas has a serious weight problem. He weighed 362 pounds when he applied for the job at Firestone. As part of the hiring process, Mr. Dugas completed an "Applicant Health History." When asked if he had ever been injured on the job, whether a doctor had placed any restrictions on his job, or whether he had any problems with the neck, back, or spine, Mr. Dugas circled "no" as an answer to all questions. Mr. Dugas only indicated that he was working out as part of a weight loss plan, wears glasses, and was receiving treatment for asthma.

Records from Dr. Rider's office indicate that only the slip and fall accident at AutoZone was reported. Dr. Gunderson's records also report only the incident at AutoZone. There is no mention in either of the records about the fall from the ladder at Firestone.

Mr. Dugas agreed at trial that he had several incidents over the years with back issues. In 2005 he was playing with his dog and pulled his back. In 2006, while working at All Serve, he was uncoupling a trailer from a truck when he felt something pull in his back. He did not miss any days of work but was placed on light-duty. In 2008. Mr. Dugas was working at Transwood when he was replacing a visor light on an eighteen-wheeler and fell from the ladder hurting his back. He only missed one or two days of work.

Mr. Dugas testified that he did not consider any of these incidents "injuries" because it was merely muscle strain and he did not miss any time from work. Mr. Dugas further explained that he wanted to make sure he got the job at Firestone because it paid more money and he was having financial problems.

5

Mr. Dugas did not tell Dr. Rider about any job accidents. He simply indicated that he thought his problems were caused by his weight and manual labor. Upon further inquiry by Dr. Rider, Mr. Dugas told him about the slip and fall at AutoZone. He testified that he told Dr. Rider about the incident at Firestone but for some reason it was not placed in the records.

Mr. Dugas explained that when he first went to see Dr. Rider, he did not know anything about workers' compensation and he wanted to get better and keep working in order to keep his job. He was afraid he would lose his job. Mr. Dugas knew that he was performing poorly at work because he could not keep up with the demand. He did not want to give Firestone any reason to fire him.

Mr. Dugas also testified that he told the nurse at Dr. Gunderson's office about both accidents but she failed to record the one at Firestone. Mr. Dugas's wife Dawn explained that the nurse seemed confused. They were told that the nurse passed out after she had finished taking Mr. Dugas's history and had to be rushed to the hospital.

We find no error in the WCJ's finding that Mr. Dugas had any intent to deceive Firestone in order to obtain benefits. Mr. Dugas was able to continue working following the previous incidents. Furthermore, he was consistent in his testimony that he wanted to get and keep his job at Firestone. His actions both before and after the accident at Firestone also support Mr. Dugas's testimony that he wanted to try and continue to work at Firestone following his fall. Accordingly, the record supports the workers' compensation judge's finding that Mr. Dugas' statements were not made with an intent to fraudulently obtain benefits.

**ACCIDENT**

Firestone also claims the WCJ erred in finding that Mr. Dugas suffered an accident while employed there. It argues that his credibility is suspect because his

6

testimony was shown to be false and contradicted by both the medical records and witnesses at trial.

A claimant is entitled to workers' compensation benefits when he suffers personal injury caused by an accident that arises out of and in the course of his employment. La.R.S. 23:1031(A). An accident is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). The burden of proving a work-related accident is on the claimant. *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215.

"Despite the lack of a witness to the accident, a claimant can establish its occurrence if: 1) no other evidence discredits or casts serious doubt upon the claimant's version of events; and 2) the claimant's account is corroborated by circumstances following the alleged accident." *Bell v. Our Lady of Lourdes Reg. Med. Ctr., Inc.*, 10-1554, p. 4 (La.App. 3 Cir. 6/1/11), 68 So.3d 1174, 1176 (citing *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992)).

Although no one witnessed Mr. Dugas fall from the ladder at Firestone, he immediately called for help. Terry Guillory confirmed that he heard Mr. Dugas calling him and when he found Mr. Dugas, he was laying on the ground. Mr. Guillory helped him up and reported the accident to Mike Trahan. Mr. Trahan testified that Mr. Guillory told him about Mr. Dugas's fall of the ladder. Mr. Trahan testified that Mr. Dugas came into the room and was red in the face and did not want to talk about it. Mr. Trahan offered an ambulance to which Mr. Dugas replied that he could not afford it. Mr. Trahan testified that he told Mr. Dugas that they had insurance for these

7

purposes. Joe Williams, the store manager, testified that he heard about the accident a couple of days later.

Mr. Dugas continued to work for a few more weeks until Labor Day when he told Mr. Trahan that his back was increasingly starting to hurt. He had a meeting with Mr. Trahan and Mr. Williams and thought they were terminating him, so he did not return to work. Mr. Williams then called him a few days later to come back. Due to the increasing back pain, Mr. Dugas went to see a chiropractor hoping to alleviate the pain. He did not immediately report the accident to Dr. Rider because he did not know about workers' compensation and he wanted to keep his job because he needed the money. As previously discussed, Mr. Dugas's wife explained that they did tell Dr. Gunderson's nurse about the accident at Firestone but she was having some medical issues at the time. Furthermore, the medical records of Drs. Eddy and Wolf both indicate that Mr. Dugas reported the Firestone accident to them.

Mr. Dugas admitted that he had back pain while working at Firestone before the accident which prevented him from keeping up with his job duties. He also had problems with overheating, dehydration, and asthma. However, after the accident, he was not able to perform anywhere near what he did before the accident. He has not been able to do physical work since the accident.

We find no error in the WCJ's conclusion that Mr. Dugas suffered a work-related accident while employed at Firestone. The accident was immediately reported, and reasonable explanations were given as to why the medical records do not indicate an accident at Firestone.

## CAUSATION

Firestone argues that Mr. Dugas's disability was caused by a pre-existing degenerative back syndrome and chronic obesity and not by an accident.

8

Alternatively, it argues if Mr. Dugas's disability resulted from an accident, it resulted from both the AutoZone and Firestone accidents.

"In order to receive workers' compensation benefits, an injured employee must establish a causal connection between their work-related accident and the resulting complained of disability." *LeJeune v. Bell Tower Corp.*, 09-1222, p. 8 (La.App. 3 Cir. 4/7/10), 34 So.3d 464, 469. "The burden of proof is by a preponderance of the evidence." *Id.*

"A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed." *Silverman v. Weatherford Intern., Inc.*, 46,402, 46,403, p. 6 (La.App. 2 Cir. 10/19/11), 83 So.3d 11, 16, *writ denied*, 12-76 (La. 3/23/12), 85 So.3d 89.

> The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition.

*Id.*

"In the case of two work-related accidents with separate employers, both of which are contributing causes of the ultimate disability, the employers and their insurers at the time of the accidents may be solidarily liable for the payment of compensation." *Id.*

There is no doubt that Mr. Dugas has had back issues for several years. There were several instances involving other work-related injuries, but he would never lose any time from work. Mr. Dugas also admitted that he would often suffer with a sore back while working, depending on the level of physical activity. However, it was not

9

until the accident at Firestone that Mr. Dugas's back pain became intense enough to seek medical attention. He was then advised by his treating doctors not to return to work. Up until the accident at Firestone, Mr. Dugas was able to perform his job, although admittedly he was not efficient. He never sought medical treatment after his injury at AutoZone.

Dr. Rider doubted that the accident at AutoZone would have sustained the inflammation that he observed for that long of a time period. He opined that something more recent had caused the inflammation because inflammation will take care of itself in a few months. When Dr. Rider first saw Mr. Dugas, he was in an acute phase of inflammation. Dr. Rider admitted that a fall off a ladder and landing on the lower back could be the source of an acute injury.

Dr. Gregory Gidman is an orthopedist who reviewed the records of Mr. Dugas. He opined that Mr. Dugas's symptoms were more probably related to the fall off the ladder. He explained that it is not the severity of the incident that matters, but the severity of the injury that does. He did not see anything objectively to indicate that the slip and fall at AutoZone was a significant injury. He noted that within a week of the AutoZone accident, Mr. Dugas's pain decreased. However, the pain after the Firestone accident remained constant.

Additionally, Mr. Dugas passed a pre-employment physical required by Firestone before he started work. Noting Mr. Dugas's obesity, the examining physician specifically found that "APPLICANT IS ABLE TO PERFORM ESSENTIAL FUNCTIONS AS LISTED WITHOUT RESTRICTIONS, LIMITATIONS OR ACCOMODATIONS." We find no error in the WCJ's determination that the accident at Firestone was the sole cause of Mr. Dugas's injuries.

10

## PENALTIES AND ATTORNEY FEES

The WCJ found that the conduct of Firestone toward Mr. Dugas warranted a $2,000.00 penalty for the denial of indemnity payments and a $2,000.00 penalty for the unwarranted refusal to pay medical expenses. The WCJ further awarded $15,000.00 in attorney fees. In making these awards, the WCJ stated:

> It is just about impossible to avoid the conclusion that Firestone, knowing full well that Mr. Dugas fell off the ladder and seriously injured himself, went straightaway to devote considerably more time, effort, and resources into proving up a fraud case then doing what needed to be done to get this man well and back to work. And the irony here is that these many and several efforts were directed toward an individual whose conduct and demeanor indicated that he never wanted to file a workers' compensation claim in the first place; rather, he just wanted the job, not a great paying job, just a job. He's ended up disabled by his injury, disowned by his employer, and defending a fraud charge.

Firestone argues that it reasonably controverted Mr. Dugas's claim, arguing that its first notice that Dugas was claiming benefits of any kind was the filing of the lawsuit itself. It argues that Mr. Dugas was offered medical treatment when he reported the accident but he declined and continued working.

Louisiana Revised Statutes 23:1201(E) provides: "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Failure to pay timely subjects the employer to penalties and attorney fees unless the claim is reasonably controverted or nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201(F)(2). "A claim is reasonably controverted when the employer or insurer produces factual or medical information that reasonably counters the claimant's evidence." *Bourgeois v. Brown's Deli & Mkt., Inc.*, 09–290, p. 7 (La.App. 3 Cir. 10/14/09), 21 So.3d 1072, 1077. A WCJ's decision on whether to award penalties and attorney fees is subject to great discretion which will not be disturbed absent an abuse

11

of discretion. *Briscoe v. McNeese State Univ.,* 11–872 (La.App. 3 Cir. 12/7/11), 80 So.3d 700.

Based on the evidence and testimony previously discussed, we do not find that the WCJ abused his discretion in awarding penalties and attorney fees. Mr. Dugas also answered the appeal requesting additional attorney fees for the work required by this appeal.

"'An increase in attorney fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase.'" *Williamson v. Liberty Mut. Ins. Co.*, 12-148, p. 7 (La.App. 3 Cir. 6/6/12), 92 So.3d 1218, 1223 (quoting *McKelvey v. City of DeQuincy*, 07–604, (La.App. 3 Cir. 11/14/07), 970 So.2d 682). Considering our affirmation of the judgment of the WCJ, we find that an additional award of $2,000.00 is appropriate to compensate Mr. Dugas for the work necessitated by this appeal.

For the reasons set forth in the opinion, we award an additional $2,000.00 in attorney fees for Mr. Dugas's counsel's work on appeal. In all other respects, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Firestone Complete Auto Care.

**AFFIRMED AS AMENDED.**